E-filing

1   COOPER, WHITE & COOPER LLP
    STEPHEN KAUS (SBN 57454)
2     skaus@cwclaw.com
    201 California Street, 17th Floor
3   San Francisco, California 94111
    Telephone:    415.433.1900
4   Facsimile:    415.433.5530

5   BARNES & THORNBURG LLP
    MICHAEL H. GOTTSCHLICH (SBN 155277)
6     michael.gottschlich@BTlaw.com
    11 South Meridian Street
7   Indianapolis, Indiana 46204
    Telephone:    317.236.1313
8   Facsimile:    317.231.7433

9   Attorneys for IRWIN UNION BANK AND
    TRUST COMPANY and IRWIN HOME
10  EQUITY CORPORATION

11

ORIGINAL
FILED

JAN 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

PJH

12                  **UNITED STATES DISTRICT COURT**

13        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14

15  IRWIN UNION BANK AND TRUST          CASE NO. C08-00472
    COMPANY and IRWIN HOME EQUITY
16  CORPORATION,                        **COMPLAINT AND DEMAND
                                        FOR JURY TRIAL**
17              Plaintiffs,

18        vs.

19  FREEDOM MORTGAGE CORPORATION,

20              Defendant.

21

22          <u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

23       1.    This case involves a breach of various duties owed by Defendant Freedom

24  Mortgage Corporation to Plaintiffs in connection with the sale and servicing of numerous

25  mortgage loans.

26                          <u>**PARTIES**</u>

27       2.    Plaintiff Irwin Union Bank and Trust Company ("Irwin Union") is a corporation

28  organized under the laws of the State of Indiana with its principal place of business in Columbus,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1

1 Indiana. Irwin Union is a commercial bank.

2    3.    Plaintiff Irwin Home Equity Corporation ("Irwin Home Equity") is a corporation

3 organized under the laws of the State of Indiana with its principal place of business in San Ramon,

4 California. Irwin Home Equity is a consumer mortgage lender.

5    4.    Defendant Freedom Mortgage Corporation ("Freedom") is a corporation organized

6 under the laws of New Jersey with its principal place of business in New Jersey. According to its

7 web site, Freedom is a licensed mortgage banker in all 50 states with over 100 offices nationwide.

8    5.    Freedom is registered to do business in California as Freedom Home Mortgage

9 Corporation.

10    **JURISDICTION**

11    6.    This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332

12 because both Plaintiffs are citizens of different states than the Defendant and because the amount

13 in controversy exceeds $75,000, exclusive of interest and costs.

14    **VENUE**

15    7.    Venue is appropriate in this District under 28 U.S.C. § 1391(a)(1) because

16 Defendant Freedom resides in this District and under 28 U.S.C. § 1391(a)(2) because a substantial

17 part of the events or omissions giving rise to the suit occurred in this District.

18    **INTRA-DISTRICT ASSIGNMENT**

19    8.    This case arises in Contra Costa County because it involves a contract containing a

20 Contra Costa County venue provision. (Exhibit A, § 8.11.)

21    **FACTUAL ALLEGATIONS**

22    9.    On or about August 7, 2006, Defendant Freedom entered into an agreement to

23 acquire substantially all of the mortgage origination assets of Irwin Mortgage Corporation

24 ("IMC"). IMC is a wholly-owned subsidiary of Irwin Union and a sister company of Irwin Home

25 Equity. Freedom's acquisition of IMC's assets under the above-referenced agreement was

26 completed in September, 2006.

27    10.    Prior to this acquisition, IMC was in the business of making loans to individual

28 borrowers to buy homes or to refinance the existing debt on their homes. These loans ("Mortgage

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                                2
                    COMPLAINT AND DEMAND FOR JURY TRIAL

1  Loans") were generally evidenced by notes secured by mortgages.

2      11.     Prior to the acquisition, IMC had an agreement with Irwin Union and Irwin Home

3  Equity under which IMC could sell the Mortgage Loans to Irwin Union and Irwin Home Equity if

4  the Mortgage Loans complied with specified guidelines.

5      12.     IMC's agreement with Irwin Union and Irwin Home Equity was memorialized in

6  the December 11, 2003 Correspondent Loan Purchase and Sale Agreement, the Addendum to

7  Correspondent Loan Purchase and Sale Agreement (Third Party Originators) dated January 6,

8  2004, and the Addendum to Correspondent Loan Purchase and Sale Agreement (Non-Standard

9  Loans) dated February 10, 2004 (together, the "Loan Purchase Agreement").

10     13.     A true and accurate copy of the Loan Purchase Agreement (including the two

11  addenda referenced above) is attached as Exhibit A.

12     14.     With respect to each Mortgage Loan sold under the Loan Purchase Agreement,

13  IMC made certain representations and warranties. (Loan Purchase Agreement, § 5.02(2).)

14     15.     The representations and warranties included that:

15     (a)     Each Loan is valid and was originated in accordance with the loan

16  origination, eligibility and credit underwriting standards of the Purchaser's

17  Underwriting Guidelines then in effect. (Loan Purchase Agreement, § 5.02(2)(b).)

18     (b)     The origination, servicing and collection practices with respect to each Loan

19  have been conducted in all respects and in accordance with the terms of the

20  Mortgage Note and in compliance with all applicable laws and regulations and in

21  accordance with the proper, prudent and customary practices in the mortgage

22  origination and servicing business. (Loan Purchase Agreement, § 5.02(2)(o).)

23     (c)     Seller complied with the purchase and post-purchase requirements of the

24  Correspondent Partner Manual with respect to the Mortgage Loans. (Loan

25  Purchase Agreement, § 5.02(2)(ee).)

26     (d)     The Mortgagor on the Mortgage Loan has reasonably demonstrated an

27  ability to repay the Mortgage Loan on the terms and conditions set forth in the

28  Mortgage Loan Documents. (Loan Purchase Agreement, § 5.02(2)(gg).)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                                    3
                COMPLAINT AND DEMAND FOR JURY TRIAL

16.     Under the Loan Purchase Agreement, if Irwin Union or Irwin Home Equity purchased a Mortgage Loan that subsequently was deemed to include a "Defect" and this Defect could not be cured, IMC was obligated to repurchase the Defective Mortgage Loan.  (Loan Purchase Agreement, § 6.02.)

17.     The original definition of "Defect" included a Mortgage Loan for which:

> [t]he Mortgagor fails to make the first Monthly Payment due to Purchaser after the Sale Date within thirty (30) days of the Monthly Payment Due Date, regardless of whether such payment is subsequently paid by the Mortgagor or if any Monthly Payment in the form of a check is returned for insufficient funds thus causing the delinquency to occur....

(Loan Purchase Agreement, § 6.01(d).)

18.     A "Defect" also includes any Mortgage Loan for which:

> [a]ny representation or warranty of the Seller contained in this Agreement, in the reasonable judgment of the Purchaser is untrue or incorrect in a manner that materially and adversely affects the value or collectability of a Mortgage Loan.

(Loan Purchase Agreement, § 6.01(c).)

19.     In connection with Freedom's purchase of IMC's assets, IMC assigned its interest in the Loan Purchase Agreement to Freedom, and Freedom assumed all of IMC's obligations under the Loan Purchase Agreement.

20.     A true and accurate copy of the Assignment and Assumption Agreement dated September 18, 2006 ("Assignment Agreement") is attached as Exhibit B.

21.     A true and accurate copy of Irwin Union's and Irwin Home Equity's Consent to Assignment dated September 29, 2006, is attached as Exhibit C.

22.     On or about October 2, 2006, Freedom sent a letter to Irwin Union and Irwin Home Equity ("October 2nd Letter") stating that Freedom had assumed all of IMC's obligations with respect to the Loan Purchase Agreement.

23.     A true and accurate copy of October 2nd Letter is attached as Exhibit D.

24.     The October 2nd Letter specifically states that "Freedom has assumed all obligations with respect [to the Loan Purchase Agreement]...."

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                                    4
COMPLAINT AND DEMAND FOR JURY TRIAL

25.    On or about October 2, 2006, Freedom executed the Addendum to Correspondent Loan Purchase and Sale Agreement (Termination of Non-Standard Loans and Other Modifications) ("Addendum").

26.    A true and accurate copy of the Addendum is attached as <u>Exhibit E</u>.

27.    The Addendum modified Section 6.01(d) of the Loan Purchase Agreement. As amended, Section 6.01(d) states:

> Following the purchase of any Loan by Purchaser pursuant to this Agreement, and notwithstanding the review of the Mortgage Loan Documents pursuant to Article II hereof, it will be deemed a "Defect" in the Mortgage Loan should any one or more of the following events occur with regard to a Mortgage Loan:
>
> ***
>
> Regardless of whether payment is subsequently paid by the Mortgagor, (i) the Mortgage Loan has been thirty (30) or more days delinquent at least once prior to the Sale Date, (ii) the Mortgage Loan is thirty (30) or more days delinquent as of the Sale Date, (iii) the Mortgagor fails to make any of the first, second or third payment[s] due to the Purchaser after the Sale Date within thirty (30) days of each Monthly Payment Due Date or (iv) any payment made in the form of a check is returned for insufficient funds thus causing (i), (ii) or (iii) to occur….

(Loan Purchase Agreement, § 6.01; Addendum, ¶ D.)

28.    Section 6.01 states that Freedom cannot cure a Defect under Section 6.01(d): "Notwithstanding anything to the contrary, in the event of a Defect under Section 6.01(d) above…, the Seller may not cure such Defect."

29.    Pursuant to the Loan Purchase Agreement and amendments, Plaintiffs Irwin Union and Irwin Home Equity purchased certain Mortgage Loans from Freedom and/or IMC.

30.    Many of these Mortgage Loans include "Defects" as defined in the Loan Purchase Agreement (the "Defective Mortgage Loans").

31.    For example, for some of the Defective Mortgage Loans, the mortgagor failed to make the first, second and/or third payment due to Irwin Union or Irwin Home Equity after the Sale Date within thirty (30) days of the respective Monthly Payment Due Date. These Defective Mortgage Loans include Defects as defined by Section 6.01(d) of the Loan Purchase Agreement and Addendum.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

32.    For some Defective Mortgage Loans, the documents submitted for loan underwriting contained untrue statements of material fact and/or omitted material facts required to make the information and statements therein not misleading.  These Defective Mortgage Loans include Defects as defined by Section 6.01(c) of the Loan Purchase Agreement.

33.    Irwin Union and Irwin Home Equity provided written notice of the Defects to Freedom.

34.    True and accurate copies of these written notices are attached as Exhibits F, G, H, I, and J.

35.    Under Section 6.02 of the Loan Purchase Agreement, Freedom was obligated to repurchase the Defective Mortgage Loans.

36.    Freedom has refused to repurchase the Defective Mortgage Loans.

37.    Section 8.10 of the Loan Purchase Agreement allows the prevailing party to recover reasonable attorneys' fees and other costs incurred in an action or proceeding to enforce the agreement.

## COUNT I – BREACH OF CONTRACT

### (Early Payment Defaults)

38.    Plaintiffs re-allege the allegations contained in paragraph 1 through 37 as though set forth fully herein.

39.    The Loan Purchase Agreement and amendments are valid, enforceable contracts.

40.    All conditions precedent to Defendant Freedom's performance have been performed, have occurred, or have been waived.

41.    Plaintiffs have performed their duties under the Loan Purchase Agreement except to the extent that they were prevented or excused from performing them.

42.    Defendant Freedom materially breached the Loan Purchase Agreement and amendments by failing to repurchase the Defective Mortgage Loans.

43.    Plaintiffs Irwin Union and Irwin Home Equity have suffered and continue to suffer damages as a result of Freedom's material  breaches.

44.    Plaintiffs are entitled to reasonable attorneys' fees and other costs incurred in this

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                                             6
COMPLAINT AND DEMAND FOR JURY TRIAL

1    action.

2    WHEREFORE, Plaintiffs Irwin Union and Irwin Home Equity request that the Court enter

3    Judgment in their favor on Count I of the Complaint and against Defendant Freedom and award

4    damages, attorneys' fees and other costs incurred in this action, and all other just and appropriate

5    relief.

6    ## COUNT II – BREACH OF CONTRACT

7    ### (Representations and Warranties)

8    45.    Plaintiffs re-allege the allegations contained in paragraphs 1 through 44 as though

9    set forth fully herein.

10    46.    The Loan Purchase Agreement and amendments are valid, enforceable contracts.

11    47.    All conditions precedent to Defendant Freedom's performance have been

12    performed, have occurred, or have been waived.

13    48.    Plaintiffs have performed their duties under the Loan Purchase Agreement except

14    to the extent that they were prevented or excused from performing them.

15    49.    The Loan Purchase Agreement and amendments contained various representations

16    and warranties, including but not limited to, that the documents, instruments and agreements

17    submitted for loan underwriting "contain no untrue statement of material fact or omit to state a

18    material fact required to be stated therein or necessary to make the statements therein not

19    misleading." (Loan Purchase Agreement, Section 5.02(2)(b).)

20    50.    Defendant Freedom violated the Loan Purchase Agreement and amendments by

21    submitting Mortgage Loans to Plaintiffs with materially inaccurate and/or incomplete information.

22    51.    Plaintiffs Irwin Union and Irwin Home Equity have suffered and continue to suffer

23    damages as a result of Defendant Freedom's material breaches.

24    52.    Plaintiffs are entitled to reasonable attorneys' fees and other costs incurred in this

25    action.

26    WHEREFORE, Plaintiffs Irwin Union and Irwin Home Equity request that the Court enter

27    Judgment in their favor on Count II of the Complaint and against Defendant Freedom and award

28    damages, attorneys' fees and other costs incurred in this action, and all other just and appropriate

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                    7
                    COMPLAINT AND DEMAND FOR JURY TRIAL

1  relief.

## COUNT III – NEGLIGENCE

53.    Plaintiffs re-allege the allegations contained in paragraph 1 through 52 as though set forth fully herein.

54.    Defendant Freedom owed a duty to Irwin Union and to Irwin Home Equity to comply with reasonable, commercial standards when underwriting loans that it intended to sell to Irwin Union and/or Irwin Home Equity.

55.    Defendant Freedom breached this duty.  For example, Freedom negligently failed to detect that borrowers did not disclose other properties that they owned; it failed to detect inconsistencies in certain properties' chains of title; and it failed to detect inconsistencies in sales documents.

56.    Plaintiffs Irwin Union and Irwin Home Equity have suffered and continue to suffer damages as a result of Defendant Freedom's negligence.

WHEREFORE, Plaintiffs Irwin Union and Irwin Home Equity request that the Court enter Judgment in their favor on Count III of the Complaint and against Defendant Freedom and award damages and all other just and appropriate relief.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded on any matters where such trial is available.

DATED: January 22, 2008

COOPER, WHITE & COOPER LLP

By:  _____
Stephen Kaus
Attorneys for IRWIN UNION BANK AND
TRUST COMPANY and IRWIN HOME
EQUITY CORPORATION

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

593772.1                                    8
COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT A**

## CORRESPONDENT LOAN PURCHASE AND SALE AGREEMENT

This is a Correspondent Loan Purchase and Sale Agreement (the "Agreement"), dated as of December 11, 2003 by and between IRWIN UNION BANK AND TRUST COMPANY, having an address of 500 Washington Street, Columbus, Indiana 47201 and/or IRWIN HOME EQUITY CORPORATION, having an address at 12677 Alcosta Blvd., Suite 500, San Ramon, California 94583 (individually and collectively, the "Purchaser") and Irwin Mortgage Corporation having an address of 9265 Counselors Row, Suite 200, Indianapolis, IN 46240 ("Seller").

### WITNESSETH

WHEREAS, the Seller desires from time to time to offer for sale to the Purchaser, and the Purchaser desires from time to time to purchase, on the terms and subject to the conditions set forth herein, certain loans ("Loans") owned by the Seller evidenced by notes and secured by mortgages of the agreed-upon priority on real property, owned by the borrowers ("Borrowers").

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and reasonable consideration, the receipt and adequacy of which each party hereby acknowledges hereto, the Seller and the Purchaser hereby agree as follows:

### ARTICLE I
### DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Agreement: This Correspondent Loan Purchase and Sale Agreement including all Exhibits and Schedules attached hereto or delivered pursuant hereto, and all amendments hereof and supplements hereto.

Assignment of Mortgage: An assignment of the Mortgage, notice of transfer, or equivalent instrument in recordable form to reflect the sale of the Mortgage, which assignment, notice of transfer or equivalent instrument may not be in the form of one or more blanket assignments.

Broker: Anyone who solicits borrowers or lenders or negotiates loans or collects payments or performs services for borrowers or lenders in connection with loans secured directly or indirectly by liens on real property.

Business Day: Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions, in the State of Indiana or the State of California or the state in which the Purchaser's servicing operations are located, are authorized or obligated by law or executive order to be closed.

Correspondent Partner Manual: The policies and procedures governing the sale and transfer of Loans between Purchaser and Seller, including the Underwriting Guidelines, as may be amended from time to time by Purchaser. Purchaser agrees to provide Seller with thirty (30) days' prior written notice of any changes to the Purchaser's Correspondent Partner Manual.

Discount Rate: The percent by which the Purchase Price is less than 100% of the outstanding principal balance of a Mortgage Loan as of the Sale Date. Also known as the Negative Service Released Premium.

Due Date: The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any grace period stipulated under the terms of the Mortgage Note.

Escrow Payments: With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, buy-down funds, optional insurance funds and any other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to the requirements of the Mortgage or any other document.

HELOC:    A Mortgage Loan that is a home equity line of credit or any other arrangement under which the Mortgagor has the right to demand further advances from the mortgagee.

High Cost Loan:    A loan subject to the Home Ownership and Equity Protection Act of 1994 (also known as a "Section 32" or "HOEPA" loan) or such other loan that was defined as a "high cost" mortgage loan under federal, state or local law at the time of origination of such loan.

Maximum Loan Amount:    With respect to each Mortgage Loan that is a HELOC, the maximum principal amount that may be outstanding at any time under the terms of the related Loan Documents.

MERS: Mortgage Electronic Registration Systems, Inc.

Monthly Payment: The scheduled monthly payment of principal and interest on a Mortgage Loan.

Mortgage:    An individual mortgage, deed of trust or other instrument which creates a lien on an estate in fee simple in real property securing the Mortgage Note.

Mortgage Loan: An individual residential mortgage loan, which is the subject of this Agreement. Each Mortgage Loan includes without limitation the Mortgage Loan Documents, the Mortgage Loan File, and all Monthly Payments, Principal Prepayment payable after the Sale Date and amounts in any buydown account, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Documents: With respect to each Mortgage Loan, the related Mortgage Note, the endorsement of the Note, the Mortgage, the Assignment of Mortgage, all intervening assignments of the Mortgage and the title policy or marked up commitment or binder therefor.

Mortgage Loan File:  A file containing the following documents for each Mortgage Loan:

(a)  The original Mortgage Note signed by the Mortgagor and bearing Seller's endorsement to Purchaser;

(b)  The original recorded Mortgage executed contemporaneously with the Note; or copies thereof certified by Seller if such original have been delivered to a recording office and not yet returned.

(c)  The Assignment of Mortgage and a certified copy of any and all intervening assignments;

*IHE Agreement Revised 6/23/03*

(d)  The original credit application;

(e)  All credit information concerning the Mortgagor or any other person obligated on the Mortgage Loan and all guarantees and other agreements securing such transactions, including all credit reports;

(f)  Evidence of application for adequate flood insurance coverage, if applicable, with respect to the Mortgaged Property, with Seller being declared or designated as mortgagee and loss payee or an authorization signed by the Mortgagor to add Seller, its successors and/or its assigns, as mortgagee;

(g)  Copies of all disclosure statements required by any federal or state law, rule or regulation, including without limitation the Real Estate Settlement Procedures Act and any truth-in-lending act or similar consumer protection act, and all statements indicating that the Mortgagor has received such required disclosures, including any acknowledgment of receipt of the original statement shown thereon;

(h)  The appraisal or property evaluation of the real estate secured by the Mortgage Loan, if required under the Underwriting Guidelines;

(i)  A statement showing the unpaid principal balance of the Mortgage Loan, the amount of periodic installments and the date(s) to which principal and interest have been paid and, if required by Purchaser, information in electronic form for all receipts and disbursements from the inception of the Mortgage Loan including the date of each receipt or disbursement;

(j)  The title insurance policy, opinion or report with respect to the lien priority of the Mortgage Loan, if required under the Underwriting Guidelines;

(k)  All documents relating to any rights of rescission of the Mortgagor; and

(l)  Any and all other documents, agreements or instruments related to the origination, closing, enforceability or purchase of the Mortgage Loan as applicable.

      Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

      Mortgaged Property: The real property securing repayment of the debt evidenced by a Mortgage Note.

      Mortgagor: The obligor on a Mortgage Note.

      Note Interest Rate: The annual rate of interest stated on a Mortgage Note.

      Premium: The amount equal to the Premium Rate multiplied by the outstanding principal balance of a Mortgage Loan as of the Sale Date.

      Premium Rate: The percent by which the Purchase Price exceeds 100% of the outstanding principal balance of a Mortgage Loan as of the Sale Date. Also known as the Service Released Premium.

Principal Prepayment: Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any prepayment penalty or premium thereon, and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Purchase Advice: The document, delivered by the Purchaser to the Seller on or immediately prior to each Sale Date, setting forth certain information regarding the Mortgage Loans, as of the Sale Date specified therein, scheduled to be transferred by the Seller to the Purchaser on such Sale Date. Such Purchase Advice shall be in the form of Exhibit "A" attached hereto.

Purchase Price: The aggregate of the amounts to be paid by the Purchaser to the Seller in exchange for the Mortgage Loans and related Servicing Rights for the related Mortgage Loans as agreed upon by the parties hereto.

Repurchase Date: The date on which the Seller repurchases a Mortgage Loan pursuant to the terms of this Agreement.

Sale Date: The date mutually agreed upon by the Seller and the Purchaser: (a) on which the Seller transfers ownership of the Mortgage Loans to the Purchaser; (b) upon which the receipt of payments, accrual of interest and other charges shall cease for the benefit of the Seller and begin for the benefit of the Purchaser; and (c) on which the Purchaser assumes the actual servicing of the related Mortgage Loans in accordance with the terms hereof.

Servicing Files: The documents, files and other items pertaining to Mortgage Loans and the servicing of such Mortgage Loans that are in the possession of the Seller on the Sale Date.

Servicing Rights: With respect to each Mortgage Loan, any and all of the following: (a) all rights to service the Mortgage Loan; (b) any payments or monies payable or received for servicing the Mortgage Loan; (c) any late fees, prepayment penalties, assumption fees, penalties or similar payments with respect to the Mortgage Loan; (d) all agreements or documents creating, defining or evidencing any such Servicing Rights and all rights of the Seller thereunder, including, but not limited to any clean-up calls and termination options; (e) other payments with respect to the Mortgage Loan and any amounts actually collected with respect thereto; (f) all accounts and other rights to payment related to any of the property described in this paragraph; (g) possession and use of the Servicing File and any files pertaining to the past, present, or prospective servicing of the Mortgage Loan; and (h) all rights, powers and privileges incident to any of the foregoing.

Underwriting Guidelines: Purchaser's loan underwriting guidelines as may be amended from time to time.

## ARTICLE II
## ELIGIBLE LOANS; LOAN REVIEW

Section 2.01     Eligible Loans

Only those Mortgage Loans that comply fully with the Underwriting Guidelines and with all of the terms and conditions of this Agreement and the Correspondent Partner Manual are eligible for purchase under this Agreement. Notwithstanding anything to the contrary in this Agreement, Purchaser has the right, without prior notice to Seller, to cease accepting loan submissions for Loans in jurisdictions

which have enacted laws or in which cases have been decided that Purchaser, in its sole discretion, believes to be unduly burdensome or places Purchaser in high risk.

<u>Section 2.02    Loan Pre-Approval</u>

From time to time, Seller may present loan applications to Purchaser for Purchaser's preapproval prior to Seller's commitment to extend credit. With respect to each Loan for which Seller desires to obtain Purchaser's preapproval, Seller shall submit to Purchaser: (i) a completed underwriting and transmittal summary in the form required by Purchaser, a sample of which is provided in the Correspondent Partner Manual; (ii) a completed loan application; (iii) a credit report; and (iv) such other documents required by the Purchaser, as stated in the Correspondent Partner Manual. Upon receipt and review of these items by Purchaser, Purchaser may, in its sole discretion, conditionally preapprove the Mortgage Loan and may, at its sole discretion, issue a written commitment for such a preapproved Mortgage Loan. Seller acknowledges and understands that such preapproval is conditional only and that Purchaser shall have no obligation to purchase such Loan unless such Loan is closed and submitted for purchase in accordance with Section 2.03 and Purchaser thereafter elects, in its sole discretion, to purchase such Loan. Furthermore, in order for any commitment issued by Purchaser under this Section 2.02 to apply, the Loan must be closed and submitted to Purchaser in accordance with Section 2.03 within the time specified in such commitment.

<u>Section 2.03    Mortgage Loan Review and Approval</u>

(a)  From time to time, Seller will present closed Mortgage Loans to the Purchaser that the Seller proposes to sell to the Purchaser under the terms of this Agreement. Seller shall deliver to Purchaser the Mortgage Loan File related to said Mortgage Loan. The Purchaser shall review said Mortgage Loan File and shall approve or disapprove each such Mortgage Loan for purchase hereunder in accordance with the procedures set forth in the Purchaser's Correspondent Partner Manual.

(b)  Seller acknowledges and agrees that Purchaser has no obligation to purchase Mortgage Loans submitted by Seller that do not meet Purchaser's standards as stated in the Correspondent Partner Manual or if Purchaser, in its discretion, believes any Mortgage Loan poses a credit and/or legal risk. Should Purchaser decide not to purchase a Mortgage Loan, Purchaser shall return the Mortgage Loan File and any other documents submitted to it to Seller. Seller may cure any deficiencies noted by Purchaser and may re-submit the Loan to Purchaser.

(c)  In the event a Mortgage Loan is submitted for approval under the terms of this Section 2.03 for which Purchaser shall have issued a written preapproval as set forth in Section 2.02, Purchaser shall not be obligated to purchase said Mortgage Loan if such Mortgage Loan at the time it is delivered fails to meet the conditions of the pre-approval or contains any other defect that would cause said loan to fail to meet the standards set forth in the Correspondent Partner Manual.

(d)  For any Loans purchased by Purchaser, the examination of the Mortgage Loan File shall not constitute a waiver of any representation, warranty, or covenant by the Seller, the Mortgagor or any other party connected with the Mortgage Loan, with respect to such Mortgage Loan.

5

Section 2.04    Notifications of Action Taken

In the event that Seller submits a loan application to Purchaser prior to Seller extending credit to the applicant, and neither Purchaser nor any other creditor extends credit to the applicant or the applicant does not accept or use any credit offered, Seller agrees to deliver to the applicant an adverse action notice in accordance with all applicable state and federal laws and regulations, including, without limitation, Regulation B and the Equal Credit Opportunity Act. Purchaser shall accurately and in a timely manner provide Seller with the information necessary for such notification.

## ARTICLE III
## CONVEYANCE FROM SELLER TO PURCHASER
## ASSUMPTION OF SERVICING BY PURCHASER

Section 3.01    Conveyance of Mortgage Loans and Servicing Rights

On each Sale Date, the Seller will sell, transfer, assign, set over and convey to the Purchaser, all right, title and interest of the Seller in and to the Mortgage Loans set forth in the related Loan Schedule and the Mortgage Loan Documents, Servicing Rights, the Mortgage Loan Files, Servicing Files related to the Mortgage Loans free and clear of all liens, security interests, charges or encumbrances.

Transfer of Title

(a)  On each Sale Date, title to each Mortgage shall be conveyed by Seller: (i) delivering to the Purchaser an Assignment of Mortgage in the name of Purchaser or Purchaser's designee for each Mortgage Loan in a form acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located, or (ii) if the Mortgage Loan is registered with MERS, properly registering the transfer in ownership in the MERS system. Seller shall bear the cost and expense of preparing all such Assignments of Mortgages and shall pay the sum of Fifty dollars ($50.00) per Mortgage Loan towards the costs incurred by Purchaser associated with recording the Assignments of Mortgage.

(b)  Title to each Mortgage Note shall be delivered by Seller to Purchaser by Seller endorsing each Mortgage Note in the manner specified by the Purchaser.   Seller shall bear the cost and expense of preparing all such endorsements.

## ARTICLE IV
## PAYMENT OF THE PURCHASE PRICE

On the Sale Date, the Purchaser shall pay the Seller, by immediately available funds, the Purchase Price set forth on the Purchase Advice. The Purchase Price shall be determined according to the rate sheets in effect at the time of origination (or Sale Date if rates have changed; see the CPM for rate change guidelines), unless the parties mutually agree to a different Purchase Price for a Mortgage Loan prior to the Sale Date for such Loan.

## ARTICLE V
### REPRESENTATIONS, WARRANTIES AND AGREEMENTS

Section 5.01     Representations, Warranties and Agreements of the Purchaser

The Purchaser, as a condition to the consummation of the transactions contemplated hereby, makes the following representations, warranties and agreements to the Seller as of each Sale Date:

(a) The Purchaser is duly organized, validly existing, and in good standing under the laws of the State of Indiana and has the power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action; this Agreement evidences the valid, binding and enforceable obligation of the Purchaser; and all requisite corporate action has been taken by the Purchaser to make this Agreement valid, binding and enforceable upon the Purchaser in accordance with its terms, subject to the effect of bankruptcy, insolvency, reorganization, moratorium and other, similar laws relating to or affecting creditors rights generally or the application of equitable principles in any proceeding, whether at law or in equity;

(b) All actions, approvals, consents, waivers, exemptions, variances, franchises, orders, permits, authorizations, rights and licenses required to be taken, given or obtained, as the case may be, on Purchaser's that are necessary in connection with the execution and the performance of the transactions hereunder have been duly taken, given or obtained, as the case may be, are in full force and effect on the date hereof, are not subject to any pending proceedings or appeals;

(c) The consummation of the transactions contemplated by this Agreement will not result in the breach of any terms or provisions of the charter or by-laws of the Purchaser or result in the breach of any term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under, any material agreement, indenture or loan or credit agreement or other material instrument to which the Purchaser or its property is subject, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Seller or its property is subject;

(d) There is no action, suit, proceeding or investigation pending or, to the best of the Purchaser's knowledge, threatened against the Purchaser which, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Purchaser or in any material impairment of the right or ability of the Purchaser to carry on its business substantially as now conducted, or in any material liability on the part of the Purchaser or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Purchaser contemplated herein, or which would be likely to impair materially the ability of the Purchaser to perform under the terms of this Agreement.

(e) From and after the Sale Date, Purchaser shall make all advances required to be made under any Mortgage Loan that is a HELOC.

*IHE Agreement Revised 6/23/03*

Section 5.02    Representations and Warranties of the Seller

1.  Seller, as a condition to the consummation of the transactions contemplated hereby, makes the following representations and warranties to the Purchaser as of the Sale Date. With respect to any representation or warranty of the Seller that is made to the best of the Seller's knowledge, if it is discovered by the Purchaser, that the substance of such representation and warranty was inaccurate as of the Sale Date, as applicable, and such inaccuracy materially and adversely affects the value of the related Mortgage Loan, then notwithstanding the Seller's lack of knowledge with respect to the inaccuracy at the time the representation or warranty was made, such inaccuracy shall be deemed a breach of the applicable representation or warranty:

   (a)  Seller is a corporation duly organized and validly existing under the laws of the state of Indiana; it has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state in which any of the Mortgaged Property is located if the laws of such state require licensing or qualification in order to (i) conduct business of the type conducted by Seller (ii) insure enforceability of each Mortgage Note and Mortgage and (iii) perform its obligations hereunder, and no demand for such qualification has been made upon the Seller by any state having jurisdiction over Seller or any of the Mortgaged Property; Seller has the power and authority to hold each Mortgage Loan and to execute and deliver this Agreement and to perform in accordance herewith and all transactions contemplated hereby; the execution, delivery and performance of this Agreement (including but not limited to all instruments of transfer to be delivered pursuant to this Agreement) by Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action; this Agreement evidences the valid, binding and enforceable obligation of Seller; and all requisite corporate action has been taken by Seller to make this Agreement valid, binding and enforceable upon Seller in accordance with its terms;

   (b)  All actions, approvals, consents, waivers, exemptions, variances, franchises, orders, permits, authorizations, rights and licenses required to be taken, given or obtained, as the case may be, by or from any federal, state or other governmental authority or agency, that are necessary in connection with the purchase and sale of the Mortgage Loans and the execution and delivery by Seller of the documents to which it is a party, including but not limited to the Mortgage Loan Documents and this Agreement, have been duly taken, given or obtained, as the case may be, are in full force and effect on the date hereof, are not subject to any pending proceedings or appeals (administrative, judicial or otherwise) and either the time within which any appeal therefrom may be taken or review thereof may be obtained has expired or no review thereof may be obtained or appeal therefrom taken, and are adequate to authorize the consummation of the transactions contemplated by this Agreement and the other documents on the part of Seller and the performance by Seller of its obligations under this Agreement and such of the other documents to which it is a party;

   (c)  The origination of the Mortgage Loans, the sale thereof and the consummation of the transactions contemplated by this Agreement will not result in the breach of any terms or provisions of the charter or by-laws of Seller or result in the breach of any term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under, any material agreement, indenture or loan or credit agreement or other material instrument to which Seller or its property is subject, or result in the violation or breach of any law, rule, regulation, legal restriction, order, judgment or decree to which Seller or its property is subject;

   (d)  Except as disclosed by Irwin Financial Corporation through SEC public filings, there is no action, suit, proceeding or investigation pending or to the best of Seller's knowledge, threatened

*IHE Agreement Revised 6/23/03*

against Seller which is reasonably likely to be adversely determined and if adversely determined, either in any one instance or in the aggregate, would result in any adverse change in the business, operations, financial condition, properties or assets of Seller or in any material impairment of the right or ability of Seller to carry on its business substantially as now conducted, or in any material liability on the part of Seller or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Seller contemplated herein, or which would be likely to impair the ability of Seller to perform under the terms of this Agreement;

(e) Seller is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or otherwise) or operations of Seller or its properties or might have consequences that would materially and adversely affect its performance hereunder;

(f) Seller does not believe, nor has any reason to believe, that it cannot perform each and every covenant contained in this Agreement;

(g) Seller represents that upon payment of the Purchase Price by the Purchaser under this Agreement, the Purchaser will have good title to each Mortgage Loan free and clear of any lien, claim, charge or encumbrances;

(h) The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by Seller pursuant to this Agreement are in the ordinary course of business of the Seller and are not subject to the bulk transfer or fraudulent conveyance laws or any similar statutory provisions in effect in any applicable jurisdiction; and

(i) The origination and collection practices used by Seller with respect to each Mortgage Note and Mortgage have been in all respects legal, proper, and prudent.

(j) If Seller intends to offer HELOCs for sale to Purchaser, Seller has complied with Purchaser's then-current eligibility guidelines for sellers of HELOCs.

Representations and Warranties with respect to the Mortgage Loans

2. Seller hereby represents and warrants with respect to each Mortgage Loan, as of the Sale Date:

(a) To the best of Seller's knowledge, the information with respect to each Mortgage Loan set forth in the Purchase Advice is true and correct as of the date thereof.

(b) Each Loan is valid and was originated in accordance with the loan origination, eligibility and credit underwriting standards of the Purchaser's Underwriting Guidelines then in effect. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan.

(c) The Seller holds good and indefeasible title to, and is the sole owner of each Mortgage Loan, subject to no liens, charges, mortgages, encumbrances or rights of others. Seller has full right to sell and assign the Mortgage Loan, and the related Servicing Rights to Purchaser pursuant to this Agreement. There has been no assignment, sale or hypothecation thereof by Seller.

*IHE Agreement Revised 6/23/03*

(d) The transfer and assignment of the Mortgage Note and Mortgage from Seller to Purchaser is valid and sufficient to vest title to the Mortgage Note and Mortgage in Purchaser.

(e) The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded. The Mortgaged Property has not been released from the lien of the related Mortgage, and no instrument been executed which would affect such release, cancellation, subordination or rescission. No Mortgagor has been released, in whole or in part, from any obligation secured thereby.

(f) Each Mortgage is a valid, enforceable and subsisting first or second lien of record (as specified by Purchaser) on the Mortgaged Property, the Mortgage, and all subsequent assignments of the original Mortgage, if any have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof.

(g) The Mortgaged Property is free and clear of all mechanics' and materialmen's liens or liens in the nature thereof, and no rights are outstanding that under law could give rise to any such lien, nor is Seller aware of any facts which would give rise to any such lien.

(h) There is no delinquent tax or assessment lien on the Mortgaged Property, and each Mortgaged Property is free of material damage and is in at least average repair.

(i) Each Mortgage Loan at the time it was made complied in all respects with applicable state, local, and federal laws and regulations, including, without limitation, usury, Section 32, consumer credit, equal credit opportunity, real estate settlement procedures, privacy, truth-in-lending and disclosure laws, and high cost laws and regulations. Seller has maintained and continues to maintain adequate training programs and written policies and procedures to ensure that all such requirements are met with respect to the Mortgage Loan. The Mortgagor has duly executed appropriate evidence indicating that the Mortgagor has received the disclosure materials as required by applicable laws and regulations.

(j) No Mortgagor on any Loan is the subject of, or is in any way affected by, any pending or, to the knowledge of Seller, threatened legal proceeding which might adversely affect the collectability or enforceability of the Mortgage Loan or the collateral securing same.

(k) Where applicable as specified in the Underwriting Guidelines, the improvements upon each Mortgaged Property are covered by a valid and existing hazard insurance policy with a sound and financially responsible carrier that provides for fire, hazard and extended coverage, duly licensed and qualified to transact business; all such insurance policies contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee, such clause being in a form such that it may be endorsed to Purchaser as loss payee as required hereunder; all premiums thereon have been paid; and to the best of Seller's knowledge, there are no facts or circumstances which could provide a basis for revocation of any policies or defense to any claims made thereon.

(l) Each Loan is not subject to any right of rescission, set-off, counterclaim or defense nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable in whole or in part, or subject to any right of rescission, set-off, counterclaim or and no such right of rescission has been asserted with respect thereto.

10

(m) To the best of Seller's knowledge, there is no proceeding, pending or threatened, for the total or partial condemnation of the Mortgaged Property, nor is such a proceeding currently occurring, and such property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended.

(n) With respect to each Loan, if upon origination (i) the Mortgaged Property is in an area identified as having special flood hazards, which require under applicable law that a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration (or any successor thereto) be obtained and (ii) such flood insurance has been made available for such Mortgaged Property, then such flood insurance policy is in effect; such flood insurance policy contains a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee, such clause being in a form such that it may be endorsed to Purchaser as loss payee as required hereunder; each Mortgage Loan has in place a fully-paid life of loan flood certification from a generally acceptable and duly licensed insurance carrier authorized to issue such policy assigned in care of Seller, which provides for notification to the Seller of changes in designated flood areas which would affect such Mortgage Loan, and each Mortgage Loan is covered by a flood map tracking system which identifies changes in the designated flood areas.

(o) The origination, servicing and collection practices, with respect to each Loan have been conducted in all respects and in accordance with the terms of the Mortgage Note and in compliance with all applicable laws and regulations and in accordance with the proper, prudent and customary practices in the mortgage origination and servicing business.

(p) Each Mortgage and Mortgage Note is genuine, and each is the legal, valid and binding obligation of the maker thereof and is enforceable in accordance with its terms, except only as such enforcement may be limited by bankruptcy, insolvency, reorganization. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to execute such documents, and such parties have duly and properly executed such documents, which documents have been acknowledged, where required. All certified copies of original documents are true copies of the originals.

(q) To the best of Seller's knowledge, all of the improvements which were included for the purpose of determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of such Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property.

(r) To the best of Seller's knowledge, no improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.

(s) The terms of the Mortgage Note and the Mortgage have not been impaired, altered, waived or modified in any respect, except by a written instrument which has been recorded or is in the process of being recorded, if necessary, to protect the interest of the Purchaser and which are in the Mortgage Loan Documents and have been or will be delivered to the Purchaser all in accordance with this Agreement; the substance of any such alteration, waiver or modification is reflected on the Purchase Advice.

(t) The proceeds of the Mortgage Loan have been fully disbursed either by payment to the Mortgagor or by payment made on Mortgagor's request or approval, and there is no obligation to make future advances thereunder; any and all requirements as to completion of any on-site or off-

site improvements and as to disbursements of any escrow funds therefor have been complied with; all costs, fees, taxes and expenses incurred in making, closing or recording the Mortgage Loans were paid and Mortgagor is not entitled to any refunds of amounts paid or due under the Mortgage Note or Mortgage;

(u) With respect to each Mortgage constituting a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(v) Unless the Purchaser has agreed to accept loans originated by a third party by attaching an addendum to this Agreement, each Mortgage Loan was originated by Seller, and not by any other third party, including but not limited to, a Broker. Seller is the original beneficiary or mortgagee in the Mortgage.

(w) The Mortgage contains a customary provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event the related Mortgaged Property is sold or transferred without the prior consent of the mortgagee thereunder;

(x) Each Mortgage contains customary and enforceable provisions which render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security intended thereby, including but not limited to(i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure; no other exemption exists available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage; the Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Soldiers and Sailors Civil Relief Act of 1940;

(y) No action of foreclosure has been initiated against, and no judgment of foreclosure been rendered against, any of the Mortgaged Properties; and to the best of Seller's knowledge, no Mortgaged Property is the subject of pending hazard or flood insurance claims;

(z) There are no Mortgage Loans with forced place insurance premiums;

(aa) There are no Mortgage Loans requiring monthly impounds, Escrow Payments, corporate advances, or any similar payments;

(bb) The first Monthly Payment Due Date for each Mortgage Loan is a date that is at least thirty (30) days after the Mortgage Loan funded.

*IHE Agreement Revised 6/23/03*

(cc) There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note or any event which with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration; and Seller has not consented to or waived or permitted to exist any default, breach, violation or event of acceleration under the Mortgage or the related Mortgage Note.

(dd) No Mortgagor is insolvent to the best knowledge of Seller.

(ee) Seller complied with the purchase and post-purchase requirements of the Correspondent Partner Manual with respect to the Mortgage Loans.

(ff) No Mortgage Loan is made within six (6) months of the date of any previous loan made by Seller or an affiliate of Seller secured by a Mortgage on the Mortgaged Property the proceeds of which are used in whole or in part to pay off such previous loan without Purchaser's prior written approval.

(gg) The Mortgagor on the Mortgage Loan has reasonably demonstrated an ability to repay the Mortgage Loan on the terms and conditions set forth in the Mortgage Loan Documents.

(hh) If the Mortgage Loan is a HELOC, the Mortgage is in a form and contains terms sufficient to be an "open-end" mortgage under the laws of the jurisdiction in which the Mortgaged Property is located so as to secure advances made after the initial recording of the Mortgage up to the Maximum Loan Amount with the same priority as advances secured thereby that have been made at the time of recording of the Mortgage.

### ARTICLE VI
### REMEDIES

Section 6.01    Remedies for Breach of Representations and Warranties of the Seller; Definition of the Term "Defect"

It is understood and agreed that the representations and warranties set forth in Article V shall survive for the life of the Mortgage Loans, and shall inure to the benefit of the Purchaser, its successors and assigns.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Section 5.02 shall accrue upon (i) discovery of such breach by the Seller or notice thereof by the Purchaser to such party, (ii) failure by the Seller, as applicable, to cure such breach, and (iii) demand upon the Seller, as applicable, by the Purchaser for compliance with this Agreement. The prevailing party in any litigation arising under this Agreement shall be entitled to the recovery of reasonable attorneys' fees. The remedies stated herein are not intended to limit any rights and remedies available at law or equity to Purchaser.

Following the purchase of any Loan by Purchaser pursuant to this Agreement, and notwithstanding the review of the Mortgage Loan Documents pursuant to Article II hereof, it will be deemed a "Defect" in the Mortgage Loan should any one or more of the following events occur with regard to a Mortgage Loan:

13                          *IHE Agreement Revised 6/23/03*

(a) Any document constituting a part of the Mortgage Loan Documents on the Sale Date, in the reasonable judgment of the Purchaser, is demonstrated by Purchaser through reasonable means to have been, defective or inaccurate in any material respect,

(b) Any such document executed by one or more of the parties to the Mortgage Loan is not valid and binding,

(c) Any representation or warranty of the Seller contained in this Agreement, in the reasonable judgment of the Purchaser is untrue or incorrect in a manner that materially and adversely affects the value or collectability of a Mortgage Loan,

(d) The Mortgagor fails to make the first Monthly Payment due to Purchaser after the Sale Date within thirty (30) days of the Monthly Payment Due Date, regardless of whether such payment is subsequently paid by the Mortgagor or if any Monthly Payment in the form of a check is returned for insufficient funds thus causing the delinquency to occur

(e) Notification to the Seller from the Purchaser within one hundred and twenty (120) days from the Sale Date related to that Loan, that a Loan does not materially conform to the characteristics for such Loan set forth in the Purchase Advice, or

(f) Seller's breach of, or failure to perform or observe, any covenant or provision of this Agreement.

(g) If (i) Purchaser determines that the Mortgage Loan is not eligible for purchase by an investor, or, (ii) Purchaser has sold the Mortgage Loan to an investor and is required to repurchase such Mortgage Loan; provided the reason for such ineligibility or repurchase shall be one of the reasons set forth in this Section 6.01.

(h) An original or copy of any document (certified by the recording office) submitted for recordation to the appropriate public recording office is not so delivered to the Purchaser or Purchaser's designee within thirty (30) days following the Sale Date.

The Seller shall cure any Defect within forty-five (45) days from the time of Seller's receipt of Purchaser's written notice to Seller of the existence of such Defect or such shorter period as may be required by applicable law. Notwithstanding anything to the contrary, in the event of a Defect under Section 6.01 (d) above or a Defect with respect to a High Cost Loan, the Seller may not cure such Defect.

Section 6.02    Repurchase of Mortgage Loan

The Seller agrees that, if a Defect occurs under the terms of Section 6.01 and cannot be cured, it will repurchase the Mortgage Loan to which the Defect relates within fifteen (15) days of receipt of written notice from Purchaser or the expiration of the 45-day curing period discussed in Section 6.01, whichever is later, at a price equal to the sum of:

(a) 100% of the unpaid principal balance of such Mortgage Loan at the Repurchase Date; or in the event Purchaser purchased the Mortgage Loan at a Discount Rate, the Purchase Price for such Loan, less the aggregate amount of principal paid to Purchaser on such Mortgage Loan as of the Repurchase Date;

(b) any interest accrued and unpaid up to the Repurchase Date calculated at the Note Interest Rate;

(c) any reasonable fees and expenses charged by other third parties and incurred by the Purchaser relating to the repurchase of the Mortgage Loan; and

(d) Any Premium paid in the Purchase Price by Purchaser to Seller.

Any repurchase pursuant to this Section 6.02 shall be accomplished by wire transfer by the repurchasing party of immediately available federal funds to the account designated by the Purchaser. The option to request or accept repurchase of any Mortgage Loan is at the sole discretion of Purchaser.

Section 6.03    Repurchase of High Cost Loans

In the event that Purchaser purchases a High Cost Loan and: (a) such High Cost Loan is reasonably determined by Purchaser to have violated at the time of origination either the Truth in Lending Act or such other federal, state or local law relating to "high cost" mortgage loans, including without limitation a violation due to Seller's failure to disclose to the borrower the nature of such loan; or (b) Seller failed to disclose to Purchaser prior to the Sale Date that the Mortgage Loan is a High Cost Loan; the Seller, at the Purchaser's option, shall, within ten (10) days after receipt of a repurchase demand from Purchaser, repurchase the High Cost Loan from the Purchaser at the price and in the manner specified in Section 6.02 above.

Section 6.04    Indemnification

In addition to Seller's repurchase obligation, Seller shall indemnify Purchaser and protect, defend and hold Purchaser, its affiliates, officers, directors, employees, agents and successors harmless from and against any and all liability, loss, cost, demand, lawsuits, injury or expense, including without limitation all court costs, expert witness fees, trial preparation fees and attorney's fees, so long as such fees or costs are reasonable in amount, which Purchaser may incur for or by reason of:

(a) A Defect in any Loan;

(b) The breach of any warranty or the untruthfulness of any representation made by Seller in this Agreement;

(c) Seller's breach of, or failure to perform or observe, any covenant or provision of this Agreement; or

(d) Seller's servicing of the Loans on or at any time prior to the applicable Sale Date of any of the Loans sold to Purchaser.

(e) Any action taken by Seller or failure to take action by Seller with respect to any Mortgage Loan prior to the Sale Date.

The foregoing provisions of this Section 6.04 shall be subject to the following conditions:

1.    Purchaser must promptly notify Seller upon commencement of any action or assertion of any claim which would give rise to a claim for indemnification if Seller is unaware of the action or assertion; and

2.    No settlement of action against Purchaser shall be made without the consent of Seller so long as indemnification continues to be sought.

*IHE Agreement Revised 6/23/03*

This indemnification shall survive the Sale Date and shall not be limited by any due diligence or other investigation undertaken by Purchaser.

Section 6.05    Remedy to Ensure Accuracy of Real Estate Appraisals

Purchaser may, within 120 days after the Sale Date and at its own expense, verify the accuracy of drive-by or full appraisals prepared in connection with any Loan by ordering a reappraisal of the Mortgaged Property. In determining the appropriate appraisal value, any review appraiser selected pursuant to this Section 6.03 shall determine the appraised value as of the original appraisal date using comparable sales that were available as of the date of the original appraisal. If the new appraisal obtained by Purchaser indicates a fair market value of more than ten percent (10%) less than the original appraisal value, then upon receipt by Seller of a signed copy of the new appraisal from Purchaser, Seller shall repurchase the Loan at the repurchase price described in Section 6.02 above and reimburse Purchaser for the cost of the appraisal. Notwithstanding the foregoing, if Seller disputes the validity of the appraisal prepared by the Purchaser's appraiser, Seller may at its own expense request Purchaser to obtain a third appraisal. Only if such third appraisal is also more than ten percent (10%) less than the original appraisal value shall the Seller be required to repurchase the Loan. Purchaser shall choose the third appraiser with Seller's approval, which approval shall not be unreasonably withheld, but such appraiser must possess all the necessary licenses and permits to appraise property in the state where the Mortgaged Property is located.

*IHE Agreement Revised 6/23/03*

## ARTICLE VII
## AGREEMENT NOT TO COMPETE;
### PREPAYMENT

Section 7.01    Agreement Not to Compete

(a)  Seller shall not take any action or permit or cause any action to be taken by any of its affiliates or employees directly, to solicit any Mortgagor for the purpose of refinancing or paying off a Mortgage Loan, in whole or in part, or for any other purpose, without the prior written consent of Purchaser for a period of twelve (12) months from the Sale Date.

(b)  Notwithstanding the foregoing, it is understood and agreed that a promotion undertaken by Seller or any affiliate of Seller which is directed to the general public at large, including without limitation mass mailings based on commercially acquired mailing lists and newspaper, radio and television advertisements, general newsletters shall not constitute solicitation under this Article VII.

(c)  It is understood and agreed that all rights and benefits relating to the solicitation of any Mortgagor and the attendant right, title and interest in and to any list of such Mortgagors and data relating to their Mortgages (including insurance renewal dates) shall be transferred to Purchaser pursuant to this Agreement as of the Sale Date, and Seller shall take no action to undermine these rights and benefits.

Section 7.02    Prepayment

In the event a Mortgage Loan is prepaid as a result of a violation by Seller of Section 7.01, Seller shall be obligated to pay the Purchaser, within thirty (30) days of the date of prepayment, an amount equal to the Premium paid by Purchaser for such Mortgage Loan. Seller understands and agrees that if such prepaid Mortgage Loan contains a prepayment penalty, then Purchaser shall be entitled to such prepayment penalty pursuant to the terms and conditions of the Mortgage Note. Any payment pursuant to this Section 7.02 shall be accomplished by wire transfer by the Seller of immediately available federal funds to the account designated by the Purchaser.

Section 7.03    Premium Recapture

(a)  In the event a Mortgage Loan is paid off in full during the first year following the Sale Date of such Loan, Seller shall be obligated to pay the Purchaser, within thirty (30) days of the date of prepayment, a portion of the Premium paid by Purchaser for such Loan as follows: One-twelfth (1/12) of the Premium paid for each full or partial month remaining in the one-year period following the Sale Date. This premium recapture requirement shall not apply to any Mortgage Loan that is paid off pursuant to a refinance loan made to the borrower by Purchaser. Seller understands and agrees that if such prepaid Mortgage Loan contains a prepayment penalty, then Purchaser shall be entitled to such prepayment penalty pursuant to the terms and conditions of the Mortgage Note. The Purchaser agrees to recapture the Premium from the proceeds of the prepayment penalty first and then from the Seller if there is any deficient balance, according to the refund calculation specified above.

*IHE Agreement Revised 6/23/03*

(b)    Within the first twelve (12) months after the Sale Date of Any Mortgage Loan, in the event a Mortgagor fails to make a Monthly Payment on such Mortgage Loan within ninety (90) days of its Payment Due Date, Seller is obligated to reimburse the Purchaser for the full amount of the Premium paid to Seller for such Loan.

Any payment pursuant to this Section 7.03 shall be accomplished by wire transfer by the Seller of immediately available federal funds to the account designated by the Purchaser.

Section 7.04    Refinancings by Seller to be Sold to Purchaser

In the event a Mortgagor refinances a Mortgage Loan with Seller or any affiliate of Seller, and such refinanced Mortgage Loan is then owned or serviced Purchaser or Purchaser otherwise retains a financial interest in the Mortgage Loan, Seller may offer such refinanced Mortgage Loan to Purchaser for purchase. If Purchaser purchases the refinancing loan, the Premium paid by Purchaser shall be based on only new monies advanced to the Mortgagor over and above the original principal balance of the Mortgage Loan.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

Section 8.01    Costs

Each party hereto shall each pay any commissions due to their respective salespersons and, except as otherwise indicated in this Agreement, the legal fees and expenses of their respective attorneys. Seller shall pay the costs associated with the physical transfer of the Mortgage Loan Documents and the Mortgage Loan Files including all recording costs. The Purchaser shall pay all other costs incurred by the Purchaser.

Section 8.02    Cooperation

To the extent reasonably possible, the parties hereto shall cooperate with and assist each other, as requested, in carrying out the purposes of this Agreement, and each shall comply with all material laws and regulations governing the Mortgage Loans and Servicing Rights. The Seller hereby grants to the Purchaser the right to obtain all reasonable and relevant information concerning the Mortgage Loans being purchased which is in the possession of the Seller. The Seller shall provide to the Purchaser, in a format mutually acceptable to the Seller and the Purchaser, any information which is not contained in the Seller's computer records and which is reasonably necessary to effect transfer of the loan file data onto the Purchaser's computer system, and Seller shall make its personnel available to assist in the transfer of the Mortgage Loans and Servicing Rights including but not limited to assistance in field to field mapping. The Mortgage servicing files shall be converted from the Seller's computer system to the Purchaser's computer system prior to the Sale Date. The Seller agrees to provide information in a mutually agreeable format according to the Purchaser's specifications including test tapes as the Purchaser may request. Any inaccuracy in the information provided by Seller pursuant to this Section shall trigger the applicable remedies set forth in Article VI.

Section 8.03    Inspection of Records and Documents and On-Site Audit

Seller shall provide Purchaser access for inspection of its books, documents and records as Purchaser shall reasonably request from time to time. Purchaser will be allowed to conduct, from time to time, financial and operational audits at Seller's office during normal business hours and upon at least ten (10) Business Days' notice. Seller shall reasonably cooperate with Purchaser in its audit activities, and Purchaser shall cooperate to minimize any disruption of Seller's ongoing operations.

Section 8.04    Protection of Confidential Information

Each party hereto shall keep confidential and shall not divulge to any party, without the other party's prior written consent, the purchase price paid for the Mortgage Loans and Servicing Rights, any information pertaining to the Mortgage Loans or any borrower thereunder, except to the extent permitted by law that it is appropriate for such party to do so in working with legal counsel, auditors, affiliates, taxing authorities or other governmental agencies, or as required by law. So long as any Mortgage Loan remains outstanding, neither Purchaser nor Seller or their respective affiliates, employees, agents or representatives shall divulge or disclose, directly or indirectly, any information, knowledge or data concerning the business practices of the other party to this Agreement, other than information which has been published or otherwise made available to the general public prior to the date hereof, or information as it relates to a Mortgagor which is given to the Mortgagor or at the Mortgagor's request to a third person unless required by law or court order. If a party hereto is required by law or court order to divulge or disclose any such information, such party shall divulge or disclose only such information as is required and shall immediately upon discovery of such requirement notify the other party of the same.

Section 8.05    Notices

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address shown below, or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

All such demands or notices shall be made under the terms indicated above to:

Purchaser:
Spencer J. Carlsen
Vice President, Irwin Union Bank and Trust Company
C/O IRWIN HOME EQUITY CORPORATION
12677 Alcosta Blvd., Suite 500
San Ramon, CA 94583

with copies to:

Gary Iorfido
Vice President, Irwin Union Bank and Trust Company
C/O IRWIN HOME EQUITY CORPORATION
12677 Alcosta Blvd., Suite 500
San Ramon, CA 94583

Seller:

Raymond J Webber
Vice President, Irwin Mortgage Corporation
10500 Kincaid Dr.
Fishers, IN 46038

*IHE Agreement Revised 6/23/03*

Section 8.06    Severability Clause

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or enforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or enforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law, which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is as close as possible to the economic effect of this Agreement without regard to such invalidity.

Section 8.07    Counterparts

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 8.08    Termination; Suspension

(a)  This Agreement may be terminated by either party at any time upon written notice; provided, however, that such termination shall not be effective for those Mortgage Loans that Purchaser has committed to purchase. The termination shall be effective upon delivery of written notice by the terminating party to the other party. Termination of this Agreement shall not in any way affect either party's obligations, representations, warranties or indemnifications with respect to Mortgage Loans already purchased by Purchaser.

(b)  In addition to the termination rights set forth above, in the event that Purchaser reasonably demonstrates or believes in good faith that (i) there has been any deception, fraud, concealment, material misrepresentation; or (ii) breach of any representation or warranty by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with this Agreement or in connection with any Mortgage Loan sold to Purchaser pursuant to this Agreement; or (iii) that Seller will be unable to fulfill any of its obligations under the Agreement or the Correspondent Partner Manual, Purchaser may, in its sole and absolute discretion, immediately and without notice (i) terminate its obligations under this Agreement, or (ii) suspend this Agreement. Purchaser agrees to send a written notice to Seller within twenty-four (24) hours of such termination or suspension. Upon termination or during the suspension period, Purchaser shall not accept any new Mortgage Loan submissions from Seller or take any further action on Loans submitted by Seller prior to termination or suspension. Furthermore, Purchaser shall immediately return to Seller any Mortgage Loans subject to a commitment, and Seller shall accept such Mortgage Loans. Any suspension shall last until Purchaser, in its sole discretion, determines to reactivate Seller or terminate this Agreement.

*IHE Agreement Revised 6/23/03*

Section 8.09    Arbitration

Upon written request by either party that is submitted according to the applicable rules for arbitration, any claim, demand or cause of action, which arises out of or is related to this Agreement (collectively "Claims"), may be resolved by binding arbitration in the State of California, in accordance with (i) the Federal Arbitration Act; (ii) the Code of Procedure ("Code") of the National Arbitration Forum ("Administrator" or "NAF") and (iii) this Agreement which shall control any inconsistency between it and the Code. The decision of an arbitrator on any Claims submitted to arbitration shall follow applicable substantive law and be in writing setting forth the findings of fact and law and the reasons supporting the decision. Such decision shall be final and binding upon the parties, subject to the right of appeal described below. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement, including the provisions of this section. Either party shall have the right to appeal to the appropriate court any errors of law in the decision rendered by the arbitrator. After a demand for arbitration is made, each party may conduct a limited number of depositions (including the production of documents) by mutual agreement or as permitted by the arbitrator.

Section 8.10    Attorney Fees

If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

Section 8.11    Forum; Governing Law

All questions regarding the validity, interpretation, or performance of any of the terms of this Agreement or of any rights or obligations of the parties shall be governed by and construed in accordance with California law. Any action between the parties relating to or arising under this Agreement shall be tried in the federal or state courts located in Contra Costa County, California.

Section 8.12    Further Agreements

The Seller and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be requested from time to time by either party, as may be necessary or appropriate to effectuate the purposes of this Agreement (including but not limited to updates of Exhibits and Schedules to be attached hereto and incorporated herein).

*IHE Agreement Revised 6/23/03*

Section 8.13　　Successors and Assigns; Assignment of Agreement

This Agreement shall bind and inure to the benefit of and be enforceable by the Purchaser and the Seller and the respective successors and assigns of the Purchaser and the Seller. No party hereto may transfer this Agreement without consent of others hereto.

Section 8.14　　No Third Party Beneficiary

No provision of this Agreement shall be deemed or construed to be for the benefit of any third party.

Section 8.15　　Waivers

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

Section 8.16　　Exhibits; Schedules

The exhibits and schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 8.17　　General Interpretive Principles

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)　the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)　accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)　references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)　a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)　the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)　the term "include" or "including" shall mean by reason of enumeration;

*IHE Agreement Revised 6/23/03*

Section 8.18    Reproduction of Documents

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

IN WITNESS THEREOF, the Purchaser and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

IRWIN UNION BANK AND TRUST COMPANY
(Purchaser)

By: _____

Name: Brenda Nirenstein

Title: AVP, Home Equity Lending

Date: 1-6-04

Attest: _____
            Assistant Secretary

_____
(Seller)

By: _____

Name: Raymond J Webber

Title: VP Product Development

Date: 12/12/2003

24                    *IHE Agreement Revised 6/23/03*

ADDENDUM TO CORRESPONDENT LOAN PURCHASE AND SALE
AGREEMENT
(Third Party Originators)

This Addendum amends, modifies, and revises that certain Correspondent Loan Purchase
and Sale Agreement dated *12/16/2003* (the "Agreement") by and between IRWIN
UNION BANK AND TRUST COMPANY, having an address of 500 Washington Street,
Columbus, Indiana 47201 and/or IRWIN HOME EQUITY CORPORATION, having an
address at 12677 Alcosta Blvd., Suite 500, San Ramon, California 94583 (individually and
collectively, the "Purchaser") and *Irwin Mortgage Corporation* ing an address of
*10500 Kincaid Dr., Fishers IN 46038* ("Seller").

WHEREAS, Seller desires from time to time to offer for sale to the Purchaser Loans that
were not originated by Seller;

WHEREAS, Seller has been approved by Purchaser to offer such Loans for sale;

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and
for other good and reasonable consideration, the receipt and adequacy of which each party
hereby acknowledges hereto, the Seller and the Purchaser hereby agree as follows:

A.  The following terms shall be added to Article 1:

> Ineligible List: The list of persons that are ineligible to do business with
> Purchaser, as such list is published by Purchaser from time to time.

> Third-Party Originator: Any person, including a Broker, other than the
> Seller who originates a Mortgage Loan.

B.  The following representation and warranty shall be added to Section 5.02 (1):

> (e)   Seller has complied with Purchaser's then-current eligibility
> guidelines for sellers of third-party originated Mortgage Loans.

C.  The following representations and warranties shall be added to Section 5.02 (2):

> (ff)   All parties which have had any interest in the Mortgage Loan,
> whether as mortgagee, assignee, pledgee, Third-Party Originator or
> otherwise, are (or, during the period in which they held and
> disposed of such interest, were) (i) in compliance with any and all
> applicable licensing requirements of the laws of the state wherein
> the Mortgaged Property is located, and (ii)(A) qualified to do
> business in such state, or (B) not doing business in such state so as
> to require qualification or licensing;

RECEIVED

DEC 1 7 2003

(gg)  Any and all requirements of any federal, state or local law including, but not limited to, usury, Section 32, consumer credit, equal credit opportunity, real estate settlement procedures, privacy, truth-in-lending and disclosure laws applicable to the Mortgage Loan have been complied with by the Third-Party Originator of such Mortgage Loan;

(hh)  The origination practices of the Third-Party Originator with respect to each Mortgage Loan are in accordance with the proper, prudent and customary practices in the mortgage origination business;

(ii)  No person listed on the Purchaser's then-current Ineligible List was involved, directly or indirectly, in originating the Mortgage Loan;

D.  The following shall be added to Section 6.04:

(f)  Any action taken by Third-Party Originator or failure to take action by Third-Party Originator with respect to any Mortgage Loan.

E.  The following shall be added to Section 8.08:

(c)  The Addendum may be terminated by either party at any time; provided however, that such termination shall not be effective for those Mortgage Loans that Purchaser has committed to purchase. The termination shall be effective upon delivery of written notice by the terminating party to the other party. Termination of this Addendum shall not in any way affect each party's obligations, representations, warranties or indemnifications under the Agreement and with respect to Mortgage Loans already purchased by Purchaser.

(d)  In the event that Purchaser reasonably demonstrates or believes in good faith that: (i) there has been any deception, fraud, concealment, material misrepresentation by the Third-Party Originator, its officers, directors, or employees; (ii) that there has been a breach of any representation or warranty by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with the Addendum or in connection with any Mortgage Loan sold to Purchaser pursuant to the Addendum; or (iii) that Seller will be unable to fulfill any of its obligations under the Addendum; Purchaser may, in its sole and absolute discretion, immediately and without notice (i) terminate its obligations under the Addendum, (ii) suspend the Addendum, (iii) terminate its obligations under the Agreement, or (iv) suspend the Agreement.  Purchaser agrees to send a written notice to Seller

2

within twenty-four (24) hours of such termination or suspension. Upon termination or during the suspension period, Purchaser shall not accept any new Loan submissions from Seller or take any further action on Loans submitted by Seller prior to termination or suspension. Furthermore, Purchaser shall immediately return to Seller any Mortgage Loans subject to a commitment, and Seller shall accept such Mortgage Loans. Any suspension shall last until Purchaser, in its sole discretion, determines to reactivate Seller or terminate this Agreement.

5.    Any capitalized words or phrases used and not defined in this Addendum shall have the meanings ascribed to them in the Agreement.

6.    All provisions of the Agreement, except as modified by this Addendum, shall remain in full force and effect. In the event of any conflict, inconsistency, or incongruity between any provision of this Addendum and any provision of the Agreement, the provisions of this Addendum shall govern and control.

IN WITNESS THEREOF, the Purchaser and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

IRWIN UNION BANK AND TRUST COMPANY
(Purchaser)

By: _____

Name: Brenda Nirenstein

Title: AVP, Home Equity Lending

Date: 1-6-04

Attest: _____
        Assistant Secretary

_____
(Seller)

By: _____

Name: Raymond J. Webb

Title: V.P. Prod & Development

3

## EXHIBIT A

### ADDENDUM TO CORRESPONDENT LOAN PURCHASE AND SALE AGREEMENT
#### (Non-Standard Loans)

This Addendum amends, modifies, and revises that certain Correspondent Loan Purchase and Sale Agreement dated December 11, 2003 (the "Agreement") by and between IRWIN UNION BANK AND TRUST COMPANY, having an address of 500 Washington Street, Columbus, Indiana 47201 and/or IRWIN HOME EQUITY CORPORATION, having an address at 12677 Alcosta Blvd., Suite 500, San Ramon, California 94583 (individually and collectively, the "Purchaser") and IRWIN MORTGAGE CORPORATION having an address at 9265 Counselors Row, Suite 200, Indianapolis, IN 46240 ("Seller").

WHEREAS, Seller desires for a limited period of time to offer for sale to the Purchaser Loans that may not meet the credit underwriting standards of Purchaser's Underwriting Guidelines (the "Non-Standard Loans");

WHEREAS, Seller has been approved by Purchaser to offer such Loans for sale subject to the terms of this Addendum;

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and reasonable consideration, the receipt and adequacy of which each party hereby acknowledges hereto, the Seller and the Purchaser hereby agree as follows:

A.     Section 5.02(2)(b) is deleted in its entirety and replaced with the following :

> Except as otherwise disclosed to Purchaser in writing as a Non-Standard Loan, each Loan is valid and was originated in accordance with the loan origination, eligibility and credit underwriting standards of the Purchaser's Underwriting Guidelines then in effect; provided, however, that the total aggregate amount of the Purchase Price paid by Purchaser for Non-Standard Loans will not exceed FIVE MILLION US DOLLARS ($5,000,000.00). The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  No fraud was committed in connection with the origination of the Mortgage.

B.     Any capitalized words or phrases used and not defined in this Addendum shall have the meanings ascribed to them in the Agreement.

1

02/10/04

EXHIBIT A

C.    All provisions of the Agreement, except as modified by this Addendum, shall remain in full force and effect. In the event of any conflict, inconsistency, or incongruity between any provision of this Addendum and any provision of the Agreement, the provisions of this Addendum shall govern and control.

IN WITNESS THEREOF, the Purchaser and Seller have caused their names to be signed hereto b y t heir r espective o fficers t hereunto d uly authorized a s o f the date first above written.

IRWIN UNION BANK AND TRUST COMPANY
(Purchaser)

By: _Edwin K Corbin_

Name: _EDWIN K CORBIN_

Title: _VICE PRESIDENT_

Date: _2/16/04_

Attest: _Tauaine Hum by_
_ASST. SECRETARY_

IRWIN MORTGAGE CORPORATION
(Seller)

By: _Ray J Webb_

Name: _Raymond J. Webber_

Title: _VP. Product Development_

Date: _2/12/04_

2                                    02/10/04

**EXHIBIT  B**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made and entered into as of September 18, 2006 (the "Effective Date"), by and between IRWIN MORTGAGE CORPORATION ("Seller") and FREEDOM MORTGAGE CORPORATION ("Buyer").

Seller and Buyer have entered into an Asset Purchase Agreement dated August 7, 2006, as amended by that certain Letter Agreement among Seller, Buyer and Shareholder dated as of September 18, 2006 (the "Purchase Agreement"). Capitalized terms used in this Agreement without definition shall have the respective meanings given to them in the Purchase Agreement.

NOW, THEREFORE, pursuant to the Purchase Agreement, and for good and valuable consideration, the receipt and sufficiency of which is acknowledged, as of the Effective Date, Seller hereby assigns to Buyer all of the Operating Assets, including Assigned Contracts other than those directly associated with the Warehouse Assets ("Assigned Operating Contracts"), and all of Seller's right, title and interest thereunder and Buyer hereby assumes all of the Assumed Liabilities other than the Warehouse Obligations, including all obligations after the Closing Date under the Assigned Operating Contracts, except to the extent such obligations (A) would have been paid, performed or otherwise discharged on or prior to the Closing Date but for a breach or default by the Seller or (B) arise out of any breach or default by Seller, provided, however, that if any Assigned Operating Contract requires the approval, consent or waiver by another Person, the assignment by Seller and the assumption by Buyer of such Assigned Operating Contract shall be effective as of the later of such Person's approval, consent or waiver, as applicable, or the Effective Date.

Nothing contained in this Agreement shall in any way supersede, modify, replace, amend, change, rescind, waive or otherwise affect any of the provisions set forth in the Purchase Agreement, including the representations, warranties, covenants and agreements set forth therein, this Agreement being intended only to effect the transfer of the Operating Assets by Seller to Buyer.

This Agreement shall be governed by and construed in accordance with the internal Laws of the State of Delaware without regard to the conflicts of law principles thereof.

[Remainder of Page Intentionally Left Blank]

This Assignment and Assumption Agreement is signed as of the date first written above.

**BUYER:**
**FREEDOM MORTGAGE CORPORATION**

By: _____

Name: Brian Simon

Title: Senior VP

**SELLER:**
**IRWIN MORTGAGE CORPORATION**

By: _____

Name:

Title:

This Assignment and Assumption Agreement is signed as of the date first written above.

**BUYER:**
FREEDOM MORTGAGE CORPORATION

By: _____
    Name:
    Title:

**SELLER:**
IRWIN MORTGAGE CORPORATION

By: _____
    Name:
    Title:

**EXHIBIT C**

## CONSENT TO ASSIGNMENT

The undersigned consent to the assignment by IRWIN MORTGAGE CORPORATION ("Assignor") to FREEDOM MORTGAGE CORPORATION ("Assignee") of all of Assignor's right, title, and interest in and to that certain Correspondent Loan Purchase and Sale Agreement dated December 11, 2003 (the "Agreement"), as amended as of the effective date of this consent. This consent is effective as of September 18, 2006, subject to Assignee's written assumption of all of Assignor's duties and obligations under the Agreement as of September 18, 2006.

IRWIN UNION BANK AND TRUST COMPANY
IRWIN HOME EQUITY CORPORATION

By: _____

Name: Edwin K. Corbin

Title: Vice President-Home Equity Lending - IUBT
Senior Vice President - IHE

Date: 9/29/06

Attest: _____
Assistant Secretary

**EXHIBIT D**




## FREEDOM MORTGAGE

10500 Kincaid Drive, Suite 300 • Fishers, IN 46037 • Office 317.594.8900 • Fax 317.598.7700
Send mail to: PO Box 8001 • Fishers, IN 46038-8001

October 2, 2006

Edwin Corbin, Vice President, IUBT
c/o Irwin Home Equity
12677 Alcosta Blvd., Suite 500
San Ramon, CA 94583

RE:    Correspondent Loan Purchase and Sale Agreement dated December 11, 2003  (the
"Agreement")

Dear Edwin:

Pursuant to the consent to assignment provided by your company, this letter is to advise
you that Irwin Mortgage Corporation has assigned all rights in the above-referenced
Agreement to Freedom Mortgage Corporation ("Freedom"). Freedom has assumed all
obligations with respect thereto, pursuant to the Assignment and Assumption Agreement
dated as of September 18, 2006.  A copy is enclosed for your file.

Please change all contact information for this Agreement to:

**Freedom Mortgage Corporation**
**OVERNIGHT DELIVERY ONLY**          **ALL OTHER MAIL**
10500 Kincaid Drive                  PO Box 8001
Suite 300                            Fishers, IN 46038-8001
Fishers, IN 46037

All phone numbers and business contacts remain the same.  Note that email addresses are
now firstname.lastname@FreedomMortgage.com.

If you have any questions regarding this assignment, please call me at 317-537-3409 or
email me at Aimee.Hill@FreedomMortgage.com.

Sincerely,

Aimee R. Hill
Associate Counsel

cc:  Lorraine Sumulong,

EXHIBIT E

## ADDENDUM TO CORRESPONDENT LOAN PURCHASE AND SALE AGREEMENT
### (Termination of Non-Standard Loans and Other Modifications)

This Addendum amends, modifies, and revises that certain Correspondent Loan Purchase and Sale Agreement dated December 11, 2003 (the "Agreement"), as amended, by and between IRWIN UNION BANK AND TRUST COMPANY, having an address of 500 Washington Street, Columbus, Indiana 47201 and/or IRWIN HOME EQUITY CORPORATION, having an address at 12677 Alcosta Blvd., Suite 500, San Ramon, California 94583 (individually and collectively, the "Purchaser") and Freedom Mortgage Corporation (assignee of IRWIN MORTGAGE CORPORATION) having an address at 907 Pleasant Valley Avenue, Suite 3, Mount Laurel, NJ 08054 ("Seller").

WHEREAS, Irwin Mortgage Corporation has assigned the Agreement to Freedom Mortgage Corporation effective as of September 18, 2006 (the "Closing Date"), and Freedom Mortgage Corporation has assumed all rights and obligations under the Agreement following the Closing Date; and

WHEREAS, Purchaser has consented to such assignment and assumption effective as of September 18, 2006; and

WHEREAS, Irwin Mortgage Corporation and Purchaser signed an Addendum to Correspondent Loan Purchase and Sale Agreement (Non-Standard Loans) ("Non-Standard Loans Addendum"), a copy of which is attached as Exhibit A; and

WHEREAS, Seller and Purchaser wish to amend the Agreement by terminating the Non-Standard Loans Addendum and making additional modifications;

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and reasonable consideration, the receipt and adequacy of which each party hereby acknowledges hereto, the Seller and the Purchaser hereby agree as follows:

A.    This Addendum shall be effective as of September 18, 2006 ("Effective Date") and apply to all Mortgage Loans funded on or after the Effective Date.

B.    The Non-Standard Loans Addendum is terminated in its entirety and shall be of no further force and effect as of the Effective Date.

C.    The definition for "Underwriting Guidelines" in Article I is modified in its entirety to read as follows:

   Underwriting Guidelines:    The loan underwriting guidelines mutually agreed upon by Seller and Purchaser and attached as Exhibit B.

D.    Section 6.01(d) is modified in its entirety to read as follows:

Regardless of whether payment is subsequently paid by the Mortgagor, (i) the Mortgage Loan has been thirty (30) or more days delinquent at least once prior to the Sale Date, (ii) the Mortgage Loan is thirty (30) or more days delinquent as of the Sale Date, (iii) the Mortgagor fails to make any of the first, second or third payment due to the Purchaser after the Sale Date within thirty (30) days of each Monthly Payment Due Date or (iv) any payment made in the form of a check is returned for insufficient funds thus causing (i), (ii) or (iii) to occur;

E.  Section 7.03(a) is modified in its entirety to read as follows:

In the event a Mortgage Loan is paid off in full during the first ninety (90) days following the Sale Date of such Loan, Seller shall be obligated to pay the Purchaser, within thirty (30) days following Seller's receipt of reasonable documentation confirming the prepayment, the Premium paid by Purchaser for such Loan; provided, however, this Premium recapture requirement shall not apply to any Mortgage Loan that is paid off pursuant to a refinance loan made by Purchaser or its affiliates. Seller understands and agrees that if such prepaid Mortgage Loan contains a prepayment penalty, then Purchaser shall be entitled to such prepayment penalty pursuant to the terms and conditions of the Mortgage Note. The Purchaser agrees to recapture the Premium from the proceeds of the prepayment penalty first and then from the Seller if there is any deficient balance.

F.  Any capitalized words or phrases used and not defined in this Addendum shall have the meanings ascribed to them in the Agreement.

G.  All provisions of the Agreement, except as modified by this Addendum, shall remain in full force and effect. In the event of any conflict, inconsistency, or incongruity between any provision of this Addendum and any provision of the Agreement, the provisions of this Addendum shall govern and control.

[Signature page follows.]

IN WITNESS THEREOF, the Purchaser and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

IRWIN UNION BANK AND TRUST COMPANY
IRWIN HOME EQUITY CORPORATION
(Purchaser)

By: _____

Name: Edwin K. Corbin

Title: Vice President-Home Equity Lending - IUBT
   Senior Vice President - IHE

Date: 9/26/06

Attest: _____
   Assistant Secretary

FREEDOM MORTGAGE CORPORATION
(Seller)

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS THEREOF, the Purchaser and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

IRWIN UNION BANK AND TRUST COMPANY
IRWIN HOME EQUITY CORPORATION
(Purchaser)

By:_____

Name:Edwin K. Corbin

Title:Vice President-Home Equity Lending - IUBT
     Senior Vice President - IHE

Date:_____

Attest:_____
       Assistant Secretary

FREEDOM MORTGAGE CORPORATION
(Seller)

By:_____

Name:_____April Schnein_____

Title:_____Sr. VP, Capital Markets_____

Date:_____1/2/06_____

**EXHIBIT F**

February 21, 2007

Sheila Hawkins
Freedom Mortgage Company
10500 Kincaid Drive #300
Fishers, Indiana 46037

Re:        Invoice #: 22007

Dear Sheila:

This letter will serve as a written request for Freedom Mortgage to repurchase the above
referenced mortgage loans under the terms of the Correspondent Loan Purchase and Sale
Agreement dated as of December 11, 2003, as amended by that certain Addendum with an
effective date as of September 1, 2006.

A prior request for research of these loans was sent to you on February 2, 2007. This letter
and invoice represent the remaining population after the research was conducted.

Irwin Union Bank purchased said loans on between October 13, 2006 and November 11,
2006. Subsequent to the purchase of the loans, the following Defect under the terms of
Article VI of the Agreement occurred: the Mortgagor fails to make any of the first, second
or third payment due to the Purchaser after the Sale Date within thirty (30) days of each
Monthly Payment Due Date. This is deemed a breach of warranty/covenant under Article
VI, Section 6.01 (d). There is no cure for an initial payment default.

The amount to repurchase these loans is set forth in the attached Excel spreadsheet.

If the payoff is not received by March 1, 2007, additional interest per day will be due. The
additional per diem cost is included in the Excel spreadsheet.

Please remit funds via a wire to:
 ABA:074902341
 Bank Name: Irwin Union Bank and Trust
 Account #: 5344385900
 Account Name: Irwin Home Equity
 Reference: IHE 53-4385-900

Please contact Christie Wells at (925) 790-5819 or the undersigned at (925) 790-4418 if
you have any questions.

Sincerely,

Carolyn Dabrowiak

Irwin Home Equity
ID#:

Cc: C. Wells, W. Throgmorton, D. Rossetter, C. Robinson

**Irwin Home Equity**
12677 Alcosta Blvd. #500
San Ramon, CA 94583

22007

## INVOICE

| Customer | |
|---|---|
| Name | Freedom Mortgage |
| Address | 10500 Kincaid Drive #300 |
| City | Fishers    State IN    ZIP 46037 |

39213
2/20/07

| Date | Project | Amount Due | Total |
|---|---|---|---|
| 2/20/07 | Early Payment Default<br>See attached for detail | $1,772,102.08 | $1,772,102.08 |
| | Please wire funds to:<br>ABA:074902341<br>Bank Name: Irwin Union Bank and Trust<br>Account #: 5344385900<br>Account Name: Irwin Home Equity<br>Reference: IHE 53-4385-900 | | |
| | | | $1,772,102.08 |

| Current UPB | Interest Rate | Interest Due | Premium | Late Charges | Recording Fee | Recoverable Fee | Suspense Fee | Total | If not received by 3/1, additional per diem |
|---|---|---|---|---|---|---|---|---|---|
| 60,840.00 | 13.875 | 3,515.98 | 677.15 | 71.48 | | | | 65,104.61 | 23.11 |
| 124,000.00 | 9.9 | 5,110.34 | 1,240.00 | 107.90 | | | | 130,458.24 | 33.58 |
| 119,828.47 | 11.0 | 1,098.41 | 1,107.21 | | | | | 122,032.09 | 36.10 |
| 59,602.74 | 11.625 | 1,731.65 | -520.66 | | | | | 60,813.73 | 18.99 |
| 299,883.83 | 10.82 | 10,606.62 | 8,996.51 | 138.66 | 36.50 | | | 319,665.02 | 67.12 |
| 48,988.28 | 12.8 | 1,044.45 | 857.50 | 26.72 | | | | 50,916.95 | 17.16 |
| 41,270.92 | 10.5 | 361.12 | -475.09 | | | | | 41,158.95 | 11.87 |
| 30,726.65 | 11.125 | 284.86 | -46.09 | | | | | 30,965.42 | 9.34 |
| 59,742.82 | 12.875 | 640.99 | 114.22 | | | | | 60,498.03 | 21.07 |
| 50,571.09 | 12.125 | 1,532.50 | 587.47 | | | | | 52,691.06 | 16.78 |
| 16,382.48 | 12.375 | 168.94 | 160.06 | 17.00 | 30.50 | | | 16,741.98 | 6.55 |
| 265,650.00 | 13.875 | 15,352.07 | 2,919.49 | | 12.00 | | | 283,950.56 | 100.89 |
| 52,864.05 | 11.25 | 1,489.10 | 645.64 | | 10.00 | 15.00 | -299.46 | 54,024.23 | 16.31 |
| 67,873.33 | 10.57 | 2,393.51 | 680.00 | | | | | 71,046.89 | 19.65 |
| 25,200.00 | 14.625 | 1,535.15 | 259.81 | | | | | 26,994.96 | 10.00 |
| 75,144.88 | 12.626 | -780.08 | 86.29 | | | | | 74,451.09 | 28.00 |
| 57,000.00 | 16.5 | 3,917.95 | 1,300.72 | | | | | 62,226.67 | 23.75 |
| 46,287.00 | 13.376 | | 501.00 | | | | | 46,788.00 | 16.66 |
| 27,985.00 | 12.32 | 574.54 | 280.00 | | | | | 28,839.54 | 9.44 |
| 63,250.00 | 11.5 | 3,028.78 | 670.46 | | | | | 66,949.23 | 19.90 |
| 37,641.00 | 13.625 | 1,709.01 | 378.29 | | | | | 39,728.30 | 14.04 |
| 62,976.26 | 13.875 | 1,455.18 | 840.09 | | | | | 65,278.53 | 23.93 |

5.85    1,693,906.85                    21,253.96                                        1,772,102.00

Total Due    1,772,102.00

**EXHIBIT G**

Irwin Home Equity
12677 Alcosta Blvd.
Suite 500
San Ramon, CA 94583-4427
925.277.2001
925.277.2009 Fax

April 19, 2007

April Schneider
Senior Vice President, Capital Markets
Freedom Mortgage Company
10500 Kincaid Drive
Fishers, IN 46037

 Irwin
Home Equity

Re:        Invoice #: 42007

Dear April:

This letter will serve as a written request for Freedom Mortgage to repurchase the above
referenced mortgage loans under the terms of the Correspondent Loan Purchase and Sale
Agreement dated as of December 11, 2003, as amended by that certain Addendum with an
effective date as of September 18, 2006.

Irwin Union Bank purchased said loans on between November 7, 2006 and December 29th,
2006. Subsequent to the purchase of the loans, the following Defect under the terms of
Article VI of the Agreement occurred: the Mortgagor fails to make any of the first, second
or third payment due to the Purchaser after the Sale Date within thirty (30) days of each
Monthly Payment Due Date. This is deemed a breach of warranty/covenant under Article
VI, Section 6.01 (d). There is no cure for an initial payment default.

The amount to repurchase these loans is set forth in the attached Excel spreadsheet.

If the payoff is not received by May 4, 2007, additional interest per day will be due. The
additional per diem cost is included in the Excel spreadsheet.

Please remit funds via a wire to:
 ABA:074902341
 Bank Name: Irwin Union Bank and Trust
 Account #: 5344385900
 Account Name: Irwin Home Equity
 Reference: IHE 53-4385-900

Please contact me with any questions.

Sincerely,

Christie Wells
Director, Corporate Development
Irwin Home Equity
(925)790-5819

cc: C. Wells, S. Shuck

an irwin Financial Company

**Irwin Home Equity**
12677 Alcosta Blvd. #500
San Ramon, CA 94583

42007

## INVOICE

| Customer | |
|---|---|
| Name | Freedom Mortgage |
| Address | 10500 Kincaid Drive #300 |
| City | Fishers      State IN      ZIP 46037 |

39211
4/19/07

| Date | Project | Amount Due | Total |
|---|---|---|---|
| 2/20/07 | Early Payment Default<br>          See attached for detail | $1,052,598.12 | $1,052,598.12 |
| | Please wire funds to:<br>ABA:074902341<br>Bank Name: Irwin Union Bank and Trust<br>Account #: 5344385900<br>Account Name: Irwin Home Equity<br>Reference: IHE 53-4385-900 | | |
| | | | $1,052,598.12 |

## Freedom Repurchase Invoice April 19, 2007

| IHE LOAN NUMBER | FREEDOM LOAN NUMBER | LAST NAME | ACQUISITION OR SALE IDENTIFIER | ACQUISITION DATE | NEXT PAYMENT DUE DATE | ACQUIRED PRINCIPAL BALANCE | Current UPB | Interest Rate | Interest Due | Premium | Escrow/ Impound Overdraft | Late Charges | Recording Fee | Recovery bh Fee | Suspense Fee | Total | If not reclaimed by 5/1 additional per diem |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51000249 | 51118545 | Jesekin | FRE112006 | 11/07/2006 | 01/01/2007 | 23,846.02 | 23,792.46 | 14.650 | 1,436.58 | 245.38 | | | | | | $ 25,475.72 | $ 9.53 |
| 51000068 | 51091310 | Thomas | FRE112006 | 11/10/2006 | 01/01/2007 | 154,731.35 | 154,721.95 | 3.990 | 3,604.38 | 3,100.00 | $ 1,740.70 | | $ 124.50 | | | $ 163,491.51 | $ 42.33 |
| 51000040 | 51145802 | Blomquist | FRE112006 | 11/10/2006 | 01/01/2007 | 69,739.93 | 69,739.93 | 15.000 | 4,316.87 | 700.00 | | | | | | $ 74,645.80 | $ 28.64 |
| 51000497 | 51164767 | Hall | FRE112006 | 11/16/2006 | 01/01/2007 | 138,936.76 | 138,013.14 | 14.625 | 5,317.88 | 1,431.70 | | $ 88.20 | | | | $ 145,801.90 | $ 44.20 |
| 51000205 | 51143174 | Roland | FRE012007 | 12/29/2006 | 01/01/2007 | 144,000.00 | 144,000.00 | 11.625 | 2,969.22 | 1,400.00 | | $ 138.98 | | | | $ 148,970.20 | $ 41.42 |
| 51000649 | 51001002 | Gutierrez | FRE012007 | 12/08/2006 | 01/01/2007 | 61,902.27 | 61,902.27 | 12.000 | 3,067.47 | 650.79 | | $ 35.71 | | | | $ 65,712.41 | $ 20.35 |
| 51000662 | 51098101 | Reeves | FRE012007 | 12/12/2006 | 12/01/2006 | 76,500.00 | 76,500.00 | 14.125 | 1,308.21 | 526.28 | | $ 31.88 | | $ 100.00 | | $ 78,416.50 | $ 27.08 |
| 51000657 | 51102150 | Mires | FRE012007 | 12/19/2006 | 12/01/2006 | 12,000.00 | 12,000.00 | 14.125 | 840.53 | 59.33 | | $ 42.12 | | $ 5.00 | | $ 12,692.08 | $ 4.64 |
| 51000688 | 51182255 | Mires | FRE012007 | 12/21/2006 | 12/01/2006 | 14,000.00 | 14,000.00 | 18.500 | 1,075.23 | 273.42 | | $ 7.17 | | $ 5.00 | | $ 15,385.78 | $ 5.94 |
| 51000166 | 51201130 | Smith | FRE012007 | 12/26/2006 | 01/01/2007 | 33,792.05 | 33,792.05 | 12.875 | 1,755.24 | 311.30 | | $ 9.13 | | $ 15.00 | | $ 35,914.59 | $ 11.51 |
| 51000514 | 51245651 | Foster | FRE012007 | 12/26/2006 | 03/01/2007 | 268,465.00 | 263,133.44 | 10.875 | 5,015.36 | 451.68 | | | | $ 15.00 | | $ 287,711.82 | $ 84.53 |
| | | | | | | 1,003,147.39 | 1,002,555.24 | | 39,111.90 | 8,515.59 | $ 17.00 | 406.19 | $ 12.00 | 135.50 | 135.00 | 0.00 | 1,052,586.12 |

Total Due: $ 1,052,584.12

**EXHIBIT  H**

Irwin Union Bank
500 Washington Street
Box 929
Columbus, IN 47202-0929
812.372.0111
812.376.1705 Fax
www.irwinunion.com

May 11, 2007

April Schneider
Senior Vice President, Capital Markets
Freedom Mortgage Company
10500 Kincaid Drive
Fishers, IN 46037

 Irwin Union
Bank

Re:    Invoice #: 51107

Dear April:

This letter will serve as a written request for Freedom Mortgage to repurchase the above
referenced mortgage loans under the terms of the Correspondent Loan Purchase and Sale
Agreement dated as of December 11, 2003, as amended by that certain Addendum with an
effective date as of September 18, 2006.

Irwin Union Bank purchased said loans on between October 13, 2006 and February 2,
2007.  Subsequent to the purchase of the loans, the following Defect under the terms of
Article VI of the Agreement occurred: the Mortgagor fails to make any of the first, second
or third payment due to the Purchaser after the Sale Date within thirty (30) days of each
Monthly Payment Due Date.  This is deemed a breach of warranty/covenant under Article
VI, Section 6.01 (d).  There is no cure for an initial payment default.

The amount to repurchase these loans is set forth in the attached Excel spreadsheet.

If the payoff is not received by May 31, 2007, additional interest per day will be due. The
additional per diem cost is included in the Excel spreadsheet.

Please remit funds via a wire to:
   ABA:074902341
   Bank Name: Irwin Union Bank and Trust
   Account #: 5344385900
   Account Name: Irwin Home Equity
   Reference: IHE 53-4385-900

Please contact me with any questions.
Sincerely,

Christie Wells
Director, Corporate Development
Irwin Home Equity
(925)790-5819

cc:  S. Shuck

an Irwin Financial Company

**Irwin Home Equity**
12677 Alcosta Blvd. #500
San Ramon, CA 94583

51107

## INVOICE

| Customer | |
|---|---|
| Name | Freedom Mortgage |
| Address | 10500 Kincaid Drive #300 |
| City | Fishers      State IN    ZIP 46037 |

51107
5/11/07

| Date | Project | Amount Due | Total |
|---|---|---|---|
| 5/11/07 | Early Payment Default<br><br>See attached for detail<br><br><br>Please wire funds to:<br>ABA:074902341<br>Bank Name: Irwin Union Bank and Trust<br>Account #: 5344385900<br>Account Name: Irwin Home Equity<br>Reference: IHE 53-4385-900 | $1,896,313.11 | $1,896,313.11 |
| | | | $1,896,313.11 |

Freedom Repurchase Invoice May 11, 2007

| HELOAN NUMBER | FREEDOM LOAN NUMBER | LAST NAME | ACQUISITION CR SALE IDENTIFIER | ACQUISITION DATE | NEXT PAYMENT DUE DATE | ACQUIRED PRINCIPAL BALANCE | Current UPB | Interest Rate | Interest Due | Premium | Escrow/ Impound Overdraft | Late Charges | Recording Fee | Reconveyance Fee | Suppose Fee | Total | If not received by 5/31, add interest per diem |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Total: 19        1,024,174.59  1,274,404.85        80,124.40  23,270.62        1,053.54   60.00   1,153.00   1,073.00   0.00   1,568,218.11   660.33

Total Due: $ 1,568,218.11

**EXHIBIT I**

June 14, 2007

Suzanne Shuck
1st VP Operations/Risk Management
Freedom Mortgage Company
10500 Kincaid Drive
Fishers, IN 46037

Re:    Invoice #: 61407

Dear Suzanne:

This letter will serve as a written request for Freedom Mortgage to repurchase the above
referenced mortgage loans under the terms of the Correspondent Loan Purchase and Sale
Agreement dated as of December 11, 2003, as amended by that certain Addendum with an
effective date as of September 18, 2006.

Irwin Union Bank purchased said loans on between November 13, 2006 and February 2,
2007. Subsequent to the purchase of the loans, the following Defect under the terms of
Article VI of the Agreement occurred: the Mortgagor fails to make any of the first, second
or third payment due to the Purchaser after the Sale Date within thirty (30) days of each
Monthly Payment Due Date. This is deemed a breach of warranty/covenant under Article
VI, Section 6.01 (d). There is no cure for an initial payment default.

The amount to repurchase these loans is set forth in the attached Excel spreadsheet.

If the payoff is not received by June 30, 2007, additional interest per day will be due. The
additional per diem cost is included in the Excel spreadsheet.

Please remit funds via a wire to:
 ABA:074902341
 Bank Name: Irwin Union Bank and Trust
 Account #: 5344385900
 Account Name: Irwin Home Equity
 Reference: IHE 53-4385-900

Please contact me with any questions.
Sincerely,

Christie Wells
Director, Corporate Development
Irwin Home Equity
(925)790-5819

cc: Stacy Blackwell

## Freedom Repurchase Invoice June 14, 2007

| IHE LOAN NUMBER | FREEDOM LOAN NUMBER | LAST NAME | ACQUISITION OR SALE IDENTIFIER | ACQUISITION DATE | NEXT PAYMENT DUE DATE | ACQUIRED PRINCIPAL BALANCE | Current UPB | Interest Rate | Interest Due | Premium | Escrow/ Impound Overdraft | Late Charges | Recording Fee | Recoverable Fee | Suspense Fee | Total | If not received by 6/00, additional per diem |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0051000374 | 8110663 | PENETRA | FRE123008 | 11/16/2006 | 04/01/2007 | 68,938.28 | 68,938.28 | 14.000 | $ 2,717.87 | 691.81 | | $ 104.92 | $ 10.00 | | | $ 62,459.48 | $ 22.60 |
| 0051000430 | 8113206 | LENIS | FRE123006 | 11/16/2006 | 04/01/2007 | 62,411.63 | 62,078.83 | 13.730 | $ 2,747.67 | 699.45 | | 153.58 | $ 10.00 | | | $ 65,930.48 | $ 23.14 |
| 0051000530 | 8113286 | LENIS | FRE123006 | 12/07/2006 | 04/01/2007 | 29,659.82 | 29,446.09 | 13.240 | $ 1,268.71 | (63.68) | | 49.93 | $ 10.00 | | | $ 30,751.74 | $ 10.70 |
| 0051000820 | 8120109 | NOEL | FRE121207 | 12/08/2006 | 04/01/2007 | 117,864.24 | 117,691.43 | 13.720 | $ 5,336.85 | 1,386.50 | | 208.22 | $ 10.00 | | | $ 124,347.01 | $ 42.69 |
| 0051000976 | 8116290 | WILSON | FRE121207 | 12/15/2006 | 04/01/2007 | 18,333.44 | 18,373.39 | 11.000 | $ 835.49 | (417.50) | | 23.83 | $ 26.00 | | | $ 18,676.83 | $ 5.53 |
| 0051000978 | 8123379 | AGUILAR | FRE093007 | 12/26/2006 | 04/01/2007 | 41,337.41 | 41,305.59 | 12.500 | $ 1,700.37 | 390.64 | | 68.18 | $ 10.00 | | | $ 43,479.23 | $ 14.13 |
| 0051000961 | 8127424 | BAZILE | FRE093107 | 01/12/2007 | 04/01/2007 | 135,936.61 | 135,906.89 | 12.670 | $ 5,769.50 | 1,052.16 | | $ 222.61 | $ 10.00 | | | $ 142,961.33 | $ 47.80 |
| 0051000978 | 8127676 | SANTIAGO | FRE093207 | 02/23/2007 | 05/01/2007 | 34,988.68 | 34,043.84 | 10.760 | $ 927.38 | 349.87 | | 32.72 | $ 10.00 | | | $ 35,365.79 | $ 10.31 |
| 0051000904 | 8124977 | BARRETT | FRE093107 | 01/12/2007 | 07/01/2007 | 308,865.20 | 308,851.21 | 12.500 | $ 10,930.78 | 6,641.87 | | 34.03 | $ 12.00 | | | $ 322,823.60 | $ 10.97 |
| 0051000868 | 8121875 | AHRENDT | FRE093207 | 01/12/2007 | 08/01/2007 | 20,094.13 | 20,094.82 | 13.730 | $ 1,189.27 | 203.76 | | $ 0.00 | $ 12.00 | | | $ 21,699.85 | $ 7.00 |
| 0051000876 | 8128774 | KOZLOWSKI | FRE093107 | 01/12/2007 | 07/01/2007 | 18,782.00 | 18,789.33 | 12.530 | $ 1,023.47 | (1.11) | | $ 10.59 | $ 10.00 | | | $ 20,772.77 | $ 6.76 |
| 0051000979 | 8127312 | CORBIN | FRE093207 | 01/12/2007 | 07/01/2007 | 18,560.69 | 18,577.59 | 12.570 | $ 711.69 | 187.67 | | $ 0.10 | $ 10.00 | | | $ 17,481.49 | $ 5.88 |
| 0051000925 | 8125071834 | MARKS | FRE093107 | 01/12/2007 | 08/01/2007 | 132,000.00 | 131,605.11 | 11.000 | $ 3,827.50 | 1,416.38 | | $ 0.00 | $ 10.00 | | | $ 136,662.88 | $ 39.72 |

Total     13         937,928.35     988,995.67         44,045.81   12,430.79       858.76    142.00      0.00      0.00     $1,044,484.03     248.68

Total Due: $1,044,484.03

**Irwin Home Equity**
12677 Alcosta Blvd. #500
San Ramon, CA 94583

61407

## INVOICE

| Customer | |
|---|---|
| Name | Freedom Mortgage |
| Address | 10500 Kincaid Drive #300 |
| City | Fishers          State IN      ZIP 46037 |

6/14/07

| Date | Project | Amount Due | Total |
|---|---|---|---|
| 6/14/07 | Early Payment Default<br>See attached for detail | $1,044,484.03 | $1,044,484.03 |
| | Please wire funds to:<br>ABA:074902341<br>Bank Name: Irwin Union Bank and Trust<br>Account #: 5344385900<br>Account Name: Irwin Home Equity<br>Reference: IHE 53-4385-900 | | |
| | | | $1,044,484.03 |

**EXHIBIT J**

Irwin Financial Corporation
500 Washington Street
P.O. Box 929
Columbus, IN 47202-0929
812.376.1909
812.376.1709 Fax
www.irwinfinancial.com



**Irwin
Financial**

January 11, 2008
*Via Express Mail*

David Altman, Esquire
Freedom Mortgage Corporation
907 Pleasant Valley Avenue, Suite 3
Mt. Laurel, NJ 08054

    RE:    <u>Correspondent Loan Purchase and Sale Agreement dated December 11,
2003 (the "Agreement") – Notice of Breach</u>

Dear Mr. Altman:

Pursuant to Sections 6.01 and 6.02 of the Agreement, Irwin Union Bank and Trust Company and
Irwin Home Equity Corporation (collectively, "Irwin") hereby provide notice that Freedom
Mortgage Corporation ("Freedom") has breached certain representations and warranties made in
Section 5.02 of the Agreement with respect to the loans detailed in <u>Exhibit A</u>. These breaches
qualify as Defects under Section 6.01, including under subparts (a) and (c).

Irwin believes that most, if not all, of these Defects are incurable. Irwin therefore demands that
Freedom repurchase these loans.

We look forward to your prompt response.

Sincerely,

Steven R. Schultz
First Vice President and General Counsel
Irwin Financial Corporation

cc:    Michael H. Gottschlich, Barnes & Thornburg
        Christopher Stimac, Enterprise Recovery and Repurchase Manager, Irwin Financial

Attachment to 1.11.09 Altman LP.XLS

| IThE Loan Number | Freedom Loan # | Borrower Last Name | Date THE Funded Freedom | Interest rate | Curr outstanding PB as of 12/20/07 | Interest rate | Premium paid to Freedom $ | Accrued Interest to 12/31/07 | Late chgs Due | Recording fee's Due | Recoverable fee's Due | TOTAL | Reason for Repurchase Request |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51000185 | 81097215 | Alkema | 11/7/2006 | 11.0000% | 33,502.02 | | 222.40 | 2,142.88 | | | | 35,817.40 | Undisclosed property owned by borrower |
| 51000343 | 81115351 | Ali | 11/7/2006 | 13.0450% | 28,955.45 | | 1,150.50 | 2,907.73 | 137.39 | | | 32,986.67 | Undisclosed properties owned by borrower |
| 51000075 | 81100159 | Ali | 10/13/2006 | 15.1500% | 29,789.49 | | 1,035.50 | 2,552.93 | 104.66 | | | 32,878.49 | Undisclosed properties owned by borrower |
| 51000363 | 81111875 | Ali | 11/7/2006 | 13.3200% | 28,921.31 | | 1,059.70 | 1,624.00 | 118.41 | (18.63) | | 31,004.85 | Undisclosed properties owned by borrower. 14 days prior to closing. |
| 51000363 | 81138648 | Anderson | 11/16/2006 | 12.2500% | 55,242.50 | | 142.47 | 1,110.67 | | | | 56,504.54 | Guidelines require within 10 days of closing. |
| 51000435 | 81156014 | Bali | 11/16/2006 | 11.7500% | 79,635.58 | | 1,070.40 | 5,455.26 | 282.66 | | 13.00 | 86,854.90 | No verification of borrower's present housing payment history.  No indication of borrower's present housing payment history. Borrower closed on another property prior to our loan, not disclosed on 1003. |
| 51000276 | 81239073 | Beasley | 12/5/2006 | 10.8750% | 137,245.51 | | (072.36) | 9,910.54 | 518.56 | 9,632.12 | | 156,611.35 | Undisclosed property owned by borrower, purchase prior to our loan closing. |
| 51000090 | 81320717 | Bernick | 2/2/2007 | 13.8750% | 25,414.47 | | 251.47 | 2,345.16 | 89.70 | | | 28,100.78 | Borrower paid in arrears of HOA |
| 51000046 | 80531659 | Bonomelia | 11/16/2006 | 11.1250% | 41,619.08 | | (311.26) | 1,151.64 | | | | 42,453.34 | Employment was missing from 1003, no verbal was performed soon required per loan program |
| 51000012 | 81165433 | Burress | 12/5/2006 | 14.8750% | 47,333.34 | | 488.21 | 2,924.67 | 148.65 | | | 50,894.88 | Missing verification on sales contract, at final sales price on HUD1 did not match final sales price on sales contract. no addendum to file. |
| 51000484 | 81156289 | Colon | 11/16/2006 | 13.6250% | 81,055.88 | | 823.37 | 5,505.98 | 187.00 | | | 87,555.81 | VOR received; appraisal price to subject, no sale price on file. HOA not in control of developer, and borrower purchased another property prior to this loan. Not disclosed on 1003. |
| 51000012 | 81005563 | Contreras | 10/13/2006 | 12.7500% | 24,029.88 | | 23.75 | 1,320.04 | 40.74 | | 11.00 | 25,351.39 | VOR VOO: Credit Report not in submitting Broker's name = no explanation provided. Occupancy questionable, not addressed. Borrower purchased another property prior to subject, did not disclose on 1003. |
| 51000067 | 81017711 | Coquat | 10/13/2006 | 14.5000% | 47,453.39 | | 52.72 | 4,557.51 | 457.62 | | 203.55 | 52,723.79 | Appraisal showed previous sale of subject 60% for $375k, our borrower purchased for $475k in 11/06. IRS Transcripts verify borrower was not employed at time of our loan. Borrower was a NVA at no employment verification |
| 51000135 | 80223690 | De La Guardia | 11/7/2006 | 11.9250% | 62,635.04 | | (492.23) | 2,599.94 | 218.44 | | | 64,940.72 | Borrower claimed this home as present residence, which was owned by mother. This was not disclosed, VOR was reported on Credit Report Supplement. 12 month housing payment history on VOR. |
| 51000017 | 81071050 | Diliman | 10/13/2006 | 15.1500% | 51,947.22 | | 624.31 | 2,442.02 | 209.64 | 1,763.00 | | 60,086.19 | Verbal VOR: In file performed by Broker, did not Lender. |
| 51000011 | 81015749 | Diliman | 10/13/2006 | 15.1500% | 51,347.88 | | 627.00 | 5,379.71 | 204.34 | | | 57,558.81 | Verbal VOR: In file performed by Broker, not the Lender. |
| 51000084 | 81123498 | Dustch | 12/15/2006 | 15.5000% | 61,192.70 | | 712.95 | 5,519.03 | 109.79 | | | 67,625.00 | Borrower owned a 2nd residence on loan prior to closing, both had mortgage liens outstanding. |
| 51000361 | 81120716 | Fahey | 12/7/2006 | 12.3850% | 117,742.98 | | 569.54 | 7,265.36 | 249.68 | | | 125,843.68 | Undisclosed additional loan on property owned. |
| 51000369 | 80050397 | Flores | 12/15/2006 | 11.1250% | 48,059.88 | | 432.52 | 2,863.66 | 93.60 | | | 51,501.41 | All documents signed by Parlot Home Funding, LLC's name is the Lender. There is no assignment from Parlot to Freedom Mtg. The assigning Lender was different entity from the assignment closing loan and/with $35k on Emerald Branch Signed. |
| 51000046 | 81145995 | Fortuna | 11/16/2006 | 13.2500% | 50,337.63 | | 1,573.67 | 1,103.87 | 28.41 | | | 53,043.58 | Undisclosed property purchased same time as subject, funded by Freedom Mtg. |
| 51000023 | 81164981 | Garcia | 11/16/2006 | 13.3750% | 44,546.07 | | 406.63 | 3,640.55 | 429.54 | 166.00 | | 49,282.85 | Undisclosed property purchased same time as subject. |
| 51000059 | 81335847 | Green | 1/27/2007 | 12.3750% | 42,980.07 | | 895.51 | 1,323.28 | 27.79 | | | 45,189.53 | Verbal VOE performed 18 days prior to funding, policy requires within 10 days. Per 1003 borrower is a permanent resident alien, no copy of residency document required in file. |
| 51000049 | 81249393 | Habscher | 2/2/2007 | 12.8750% | 56,664.89 | | 811.44 | 4,383.69 | 225.47 | | | 63,895.72 | Verbal VOE: In file performed by Broker, not the Lender. |
| 51000031 | 81038407 | Hubert | 10/13/2006 | 13.5000% | 107,690.37 | | (1,205.26) | 8,659.15 | 345.79 | | | 115,500.20 | Borrower closed on another property less than a month prior to our loan closing, undisclosed on 1003. |
| 51000031 | 81155522 | Leu | 12/15/2006 | 11.6900% | 110,755.21 | | 554.93 | 7,510.75 | 369.48 | | 13.00 | 118,221.29 | Borrower did not disclose two 2nd liens which were not reporting on credit report. $28,600 on 1722 Old Daytona Rd and $35K on Emerald Branch Signed. |
| 51000068 | 81254060 | Medina | 2/2/2007 | 13.5000% | 71,175.61 | | 691.56 | 8,368.60 | 205.67 | | | 76,710.15 | Borrower purchased additional property same time as subject, did not disclose on 1003. |
| 51000061 | 81092056 | Mohamed | 11/16/2006 | 8.1250% | 56,697.44 | | (832.85) | 2,154.48 | 69.81 | | | 58,489.72 | Borrower owned 3 other properties not disclosed on 1003, all three had mortgage liens outstanding. Purchase Contract in file not signed by our borrower. A separate signed purchase contract by someone other than our borrower was in the file. |
| 51000048 | 81044104 | Perea | 11/16/2006 | 13.2500% | 56,985.17 | | (119.60) | 3,102.92 | 55.40 | | | 59,455.39 | Missing 2 most recent required by loan program |
| 51000023 | 81251913 | Pidemoore | 12/15/2006 | 12.8750% | 55,775.53 | | 173.34 | 1,438.15 | 55.28 | | | 56,715.58 | Missing 2 most recent required by loan program |

Attachment to 1.11.00 Altman LU.XLS

| Loan # | Borrower | Date | Rate | Amount | | | | | Total | Comment |
|---|---|---|---|---|---|---|---|---|---|---|
| 51000995 | 81329170 Quisi | 2/2/2007 | 13.1250% | $ 125,237.58 | $ 2,609.83 | $ 9,552.96 | $ 348.80 | $ 110.00 | $ 137,870.09 | Appraisal research showed S/P appraised for $328,000 on 10/19/06. S/P last sold for $302,000 on 10/23/04. Contralgic verifies comps 2 & 3 used in this appraisal were back over 1.5+ miles from the S/P. Contralgic shows comps ignored by appraiser, which we disclose this on 1003 |
| 51000811 | 51237156 Restino | 12/20/2006 | 11.9250% | $ 50,017.48 | $ 619.32 | $ 1,620.52 | $ - | | $ 55,296.80 | Borrower purchased additional property same time as subject, did not disclose this on 1003 |
| 51000895 | 81177099 Ross | 1/12/2007 | 14.5000% | $ 77,608.48 | $ 904.28 | $ 5,611.26 | $ 114.16 | | $ 84,235.16 | Appraisal was "subject to", no completion report provided. Adjustments to comps exceeds guidelines. |
| 51000848 | 81243018 Rosales | 2/2/2007 | 11.8750% | $ 160,858.41 | $ 2,135.08 | $ 7,622.43 | $ 246.09 | | $ 171,003.01 | Loan was a Non-Arms Length transaction, not eligible under loan program |
| 51000427 | 81135077 Roy | 11/10/2006 | 15.5000% | $ 43,147.40 | $ 497.92 | $ 2,726.16 | $ 84.54 | | $ 46,468.02 | Borrower purchased additional property same time as subject, did not disclose this on 1003, under new Freddie Mac |
| 51000368 | 81136919 Strong | 11/7/2006 | 10.5000% | $ 24,984.37 | $ (666.94) | $ 426.59 | $ 34.02 | $ 0.52 | $ 24,436.00 | Verbal VOE was performed by broker, not Flagstar Mtg |
| 51000889 | 81100288 Thomas | 2/2/2007 | 12.8750% | $ 31,651.24 | $ 351.94 | $ 674.44 | | $ 15.00 | $ 32,692.62 | NIVA loan. 1003 indicated present residence was sold. Redirient shows borrowers still own it, and referenced that property prior to our loan closed. New mortgage not disclosed or included in DTI. |
| 51000337 | 81094980 Thai | 11/7/2006 | 12.3750% | $ 39,850.44 | $ 429.49 | $ 3,532.85 | $ 78.04 | | $ 40,900.91 | Borrower purchased additional property same time as subject, did not disclose this on 1003 |
| 50000599 | 81191481 Valentine | 12/1/2006 | 11.7500% | $ 42,907.34 | $ 223.99 | $ 3,351.45 | $ 151.80 | | $ 46,640.37 | Seller contributions exceeds 3% guideline limitations |
| 51000380 | 81075164 Van Dyke | 11/10/2006 | 13.3500% | $ 34,553.88 | $ 247.04 | $ 3,044.50 | $ 118.88 | | $ 37,982.30 | DTI exceeds 70%, owns real estate owner with mortgage not included in DTI at time of loan |
| 51000510 | 81171653 Wagner | 11/10/2006 | 11.8750% | $ 43,233.60 | $ 440.68 | $ 1,704.62 | $ 29.26 | | $ 45,414.15 | HOA in center of developer |
| Total: | 40 | | | $ 2,373,010.63 | $ 16,993.32 | $ 162,155.53 | $ 9,369.83 | $ 11,909.72 | $ 2,582,498.38 | |