Pages 1 - 16

United States District Court

Northern District of California

Before The Honorable Phyllis J. Hamilton

| | |
|---|---|
| Irwin Union Bank and Trust Company, et al.<br><br>            Plaintiff,<br><br>  vs.<br><br>Freedom Mortgage Corporation,<br><br>            Defendant. | No. C08-472 PJH |

San Francisco, California
Wednesday, April 30, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:

| | |
|---|---|
| For Plaintiff: | Wilson, Sonsini, Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, California  94304-1050<br>   **By:  David J. Berger, Esquire**<br>        **Jenny Dixon, Esquire**<br><br>Zukeman Gore & Brandeis LLP<br>875 Third Avenue, 28th Floor<br>New York, NY  10022<br>   **By:  John K. Crossman, Esquire** |
| For Defendant: | Buty & Curliano LLP<br>555 12th Street, Suite 1280<br>Oakland, California  94607<br>   **By:  Jason Curliano, Esquire** |
| *Reported By:* | *Sahar McVickar, RPR, CSR No. 12963*<br>*Official Reporter, U.S. District Court*<br>*For the Northern District of California* |

(Computerized Transcription By Eclipse)

*Sahar McVickar, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

```
 1  Wednesday, April 30, 2008                              9:00 a.m.
 2                        P R O C E E D I N G S
 3           THE CLERK:  Civil case number 08-472, Irwin Union
 4  Bank and Trust, et al., versus Freedom Mortgage Corporation.
 5           Counsel, appearances.
 6           MR. BERGER:  Good morning, Your Honor.
 7           David Berger from Wilson, Sonsini, Goodrich &
 8  Rosati, for Irwin.
 9           With me is my colleague, Jenny Dixon.
10           MR. CROSSMAN:  Good morning, Your Honor.
11           John Crossman from Zukeman, Gore & Brandeis in
12  New York, appearing pro hac vice.
13           And, thank you for granting that request.  And with
14  me is Jason Curliano from this Bar.
15           MR. CURLIANO:  Good morning, Your Honor.
16           THE COURT:  All right, this matter is on for a
17  hearing on defendant's motion to compel -- well, motion to
18  dismiss and/or stay and/or compel arbitration, I'm not exactly
19  sure.  We can get right to the heart of this -- of the issue.
20           I don't -- I've read all your papers; I don't need
21  to hear a lot of argument about whether or not this is an
22  appropriate case to arbitrate.  This is no dispute that there
23  is a valid arbitration agreement.  There is no dispute that the
24  dispute is encompassed within that agreement.
25           There is dispute as to whether or not the agreement
```

1  is mandatory or permissive agreement.  I'll -- my tentative
2  ruling on that is that it is mandatory.  All of the cases that
3  have been cited, and that we've been able to find say that
4  "may," the use of the word "may" in such a provision, i,s,
5  nonetheless, a mandatory provision.  California Courts of
6  Appeals have also found that.
7          But, notwithstanding that, I'm kind of at a loss as
8  to what it is that the defendant wants in this case and what it
9  is you think that you are entitled to.  So, what I'd like,
10 since this is the defendant's motion, I'd like for you to
11 explain.
12         Now, as I understand it, your client, Freedom
13 Mortgage, filed a request for arbitration with the National
14 Arbitration Forum.
15         **MR. CROSSMAN:**  Yes, Your Honor we did.
16         **THE COURT:**  Asked the Arbitration Forum to stay
17 arbitration of this exact dispute, correct?
18         **MR. CROSSMAN:**  Correct, Your Honor.
19         **THE COURT:**  The National Arbitration Forum stayed
20 arbitration.
21         **MR. CROSSMAN:**  Not exactly, Your Honor.  There's
22 been some, I think, frankly, just an honest mistake on the part
23 of my adversary about what exactly happened.
24         The National Arbitration Forum, we told them that we
25 had a motion -- that there was a court proceeding filed already

1  before Your Honor -- and that we had made a motion to stay or
2  dismiss that court proceeding and to commence the arbitration.
3  And, so as far as this Court proceeding is concerned, we simply
4  told National Arbitration Forum about this proceeding, and
5  they, automatically, without any arbitrator having been
6  appointed, said, fine, we'll wait and see what happens in the
7  Northern District of California.
8          Now, the point of confusion, where I think the
9  mistake was made, is that we have also, Freedom Mortgage, that
10 is, has commenced a different lawsuit based on an entirely
11 different contract against two different parties, neither of
12 which is a party to this action in Delaware, which has to do
13 with a very large acquisition that was done by my client from a
14 company which is a parent, an ultimate parent of the parties
15 that are before Your Honor.  And, we believe that that
16 proceeding in Delaware will, in the end, cause the parent
17 company of the parties that are before Your Honor to tell its
18 subsidiary, that it wholly owns and controls, to drop this
19 matter.
20         So, you have a situation where the parents are
21 fighting on the East Coast and the children, if I can use that
22 expression, are fighting on West Coast.  And, our view is if
23 you are going to have those two fights, since the parent does
24 control the subsidiary of Irwin, and, if we are right in
25 Delaware, that the parent has a contract which specifically

1    obligates it to control its subsidiary in this fashion, it's
2    not like we made up some -- you know, there is a specific
3    contractual provision in the Delaware proceeding which entitles
4    us to require that parent to basically tell the subsidiary to
5    lay off.
6             So, our request to the panel of the arbitrators is,
7    look, if that's the case, if that's what we're fighting over in
8    Delaware, doesn't it make sense to get that question answered
9    fist?  Because otherwise, if the arbitration goes to
10   completion, you have a dispute over this relatively small
11   contract compared to the big one that is being litigated in
12   Delaware.  And, you could, at least theoretically, end up with
13   a result where the arbitrators would make a ruling of, well,
14   this is how the contract shakes out only to find that the
15   Delaware Court agrees with us that we are entitled to have the
16   parent company stop the enforcement of this contract.
17            **THE COURT:**  So your goal is to have the Delaware
18   case go forward first.
19            **MR. CROSSMAN:**  We think that makes the most sense.
20            **THE COURT:**  Wasn't there a request filed in the
21   Delaware court to have that case transferred to this Court?
22            **MR. CROSSMAN:**  Absolutely.  They did that last week.
23   Not us, we didn't do it.
24            **THE COURT:**  Okay.  I'm just really confused.
25            You file a request, your client files a request for

1  arbitration, the arbitration is stayed pending --
2           **MR. CROSSMAN:**  Well, I think --
3           **THE COURT:**  Let's just use that not as a term of
4  art.
5           **MR. CROSSMAN:**  Okay.
6           **THE COURT:**  The arbitration is not going forward
7  pending developments in the Delaware case.
8           **MR. CROSSMAN:**  No.  I'm sorry, I don't mean to
9  interrupt, Your Honor, but that is where this misunderstanding
10 is.
11          **THE COURT:**  Well, that's what the latest filing by
12 plaintiff's counseling says.
13          **MR. CROSSMAN:**  I know.  And they are just mistaken
14 about it.  It's not that hard to make this mistake.  Let me
15 explain why.
16          We did ask that, once the arbitrator is appointed in
17 that arbitration, that they take up the question of sequencing
18 whether the arbitration should go before, after, or at the same
19 time as the Delaware action.  But, no arbitrator has been
20 appointed.  That application has not been heard.  Nothing has
21 been done on it at all.
22          However, because there is a dispute about whether
23 the dispute that's before Your Honor is arbitrable, and now we
24 are talking about the case that is right here in the Northern
25 District of California, we are not talking about the Delaware

1  action, because of that, the National Arbitration Forum said,
2  okay, we'll wait.  We are not going to do anything until we
3  find out if the Court is going to send us to arbitration or
4  not.
5          **THE COURT:**  So --
6          **MR. CROSSMAN:**  If I could just say one other thing,
7  Your Honor?
8          To make absolutely sure that this was correct, I
9  called National Arbitration Forum the day after I got the brief
10 from my counsel in Delaware that said what Your Honor said,
11 and, I said to the case administrator, because there is no
12 arbitrator, I said didn't you guys just decide what you were
13 doing because you wanted to find out if the case was going to
14 have arbitration compelled in the Northern District of
15 California?  And, he said, yes, absolutely.  I said, well, the
16 letter that you sent out, the National Arbitration
17 administrative sent out, doesn't actually identify the case
18 name that they are talking about.
19         So I said, well, would you please just send a letter
20 to everyone that actually specifically identifies the case you
21 are waiting for before you proceed so that everyone understands
22 what is going on here?  And he said, sure, no problem, just
23 send me an E-mail confirming that is what you want to do.  So I
24 did that.
25         And then, what is today, Wednesday?  I think it was

```
 1   Monday that we got a letter by E-mail just like that, which I
 2   understand that counsel received also, although, when I got the
 3   letter from National Arbitration Forum, I said, I don't see a
 4   cc to my opposing counsel, did you send it to him?  He says,
 5   yes, they got it, too.  So, National Arbitration Forum told me
 6   that they have clarified this, that they have not -- they
 7   haven't appointed an arbitrator, haven't ruled on our
 8   substantive motion regarding the sequencing of the two coastal
 9   disputes, but they are waiting to hear what Your Honor wants to
10   do with this current motion to stay or to dismiss.
11            THE COURT:  Assuming I were to order arbitration --
12            MR. CROSSMAN:  Yes.
13            THE COURT:  -- are you going to seek a stay of that
14   -- well, I'm not exactly sure what you are asking for here.
15   You ask in the alternative for me to decide the underlying
16   case, if I compel arbitration, or to stay the underlying case,
17   pending arbitration.
18            I'm a little unclear about how I stay arbitration
19   here, or stay the case pending arbitration, if the arbitrable
20   forum is staying or withholding action on the exact same
21   arbitration.
22            MR. CROSSMAN:  I think I can clarify that.  And I
23   understand that it's confusing because these same words get
24   used in different contexts.  But, the way it works is: Your
25   Honor, as I understand the law, is charged with making a very
```

1  clear decision, which you alluded to at the beginning of Your
2  Honor's remarks, which is is there an arbitration agreement and
3  does this fall within it?  And if so, based on our request to
4  compel arbitration, Your Honor ought, then, to compel
5  arbitration.  Once that's been done, and we report that to the
6  National Arbitration Forum, they will proceed.  That's all they
7  are waiting for, is confirmation that Your Honor is not going
8  to say, for some reason they don't comprehend at the National
9  Arbitration Forum, that this can't be arbitrated.  So that's
10 all they are waiting for.
11         At that point, what I would expect to happen is that
12 the normal process of appointing an arbitrator would occur.
13 And then, we would go to that arbitrator and have a conference
14 and we would say what is going to happen in this arbitration?
15 And we would say, well, there is this case in Delaware, and we
16 think that should really be resolved first.  And my adversary
17 will say whatever they say --
18         **THE COURT:**  Is the Delaware case subject to
19 arbitration?
20         **MR. CROSSMAN:**  No, no.  There is no arbitration
21 clause.  It's different parties.  And it's a Delaware
22 Litigation Forum Selection, in capital letters.  So, I don't
23 actually think that that's going to happen, although Your Honor
24 is aware that our adversary has asked not only that there not
25 be arbitration, but that the entire Delaware proceeding, which

1  is a more substantial case, frankly, be transferred to Your
2  Honor.  And that, to me, is just one more reason why we need to
3  get the motion that is before Your Honor resolved, clearly,
4  because we don't want cases being transferred to Your Honor,
5  after arbitration has started, when Your Honor thinks that
6  you're done with this thing.  Then, it's going to be chaos.
7         I don't actually think they can transfer that one
8  because the forum selection is so clear, but I bring it up as a
9  possibility.
10         Have I clarified anything, Your Honor, at all?
11         **THE COURT:**  Yeah.  Yeah.  Okay.
12         All right, Mr. Berger?
13         **MR. CROSSMAN:**  Thank you, Your Honor.
14         **MR. BERGER:**  Your Honor, a couple of things, first
15  in response to the most recent questions.
16         There is no question that my colleague on the other
17  side is trying to stay the arbitration in the National
18  Arbitration Forum.  In their application for arbitration, they
19  state in paragraph 10 that "At the outset of this
20  arbitration" -- this is a document that is attached at
21  Ms. Dixon's declaration at Exhibit 2 -- they state that, "At
22  the outset of this arbitration, Freedom will request that the
23  panel abstain from conducting further proceedings until the
24  injunction action is resolved."  And, the injunction action is
25  what they are shorthand referring to as the Delaware action,

1  okay?
2          And then, they say, they go on, "The outcome of the
3  injunction action should result in the dismissal of this
4  proceeding."  And that is at paragraph 10, page 4 of Exhibit 2
5  to Ms. Dixon's declaration.
6          **THE COURT:**  Okay.
7          **MR. BERGER:**  What is happening here is really sui
8  generis, Your Honor.  What we have are two litigations that
9  cover essentially the same issues.  The issues in the case are
10 Irwin -- one of the Irwin entities, Irwin Financial Corporation
11 -- sold another Irwin entity to Freedom.  As part of that sale,
12 Freedom assumed liabilities of a basic contract that Irwin
13 entity had with these two Irwin entities that are before Your
14 Honor in this case.
15         There is now a dispute over what should happen with
16 respect to that contract that Freedom assumed, all right?  And
17 that is, frankly, the dispute that is occurring in Delaware as
18 well as the dispute that's occurring here.
19         What -- we filed originally the case that just
20 covered the dispute over these, these particular contracts, and
21 Freedom is now trying to expand that and go to a broader issue
22 and try and sort of run -- run an end-run, and file a --
23 essentially choose a different forum and prefers to litigate
24 this case in Delaware.
25         We frankly don't care where this case is litigated.

1   We believe that this is the appropriate forum for the reasons
2   set forth in our papers.  What we think doesn't make any sense,
3   Your Honor, is to have multiple cases going on in multiple
4   forums.  What we do think is the issues in this case have to be
5   resolved, all right?  We think that, frankly, the Delaware
6   litigation doesn't make a lot of sense for whole other reasons,
7   and we filed our papers to dismiss in that case, but we also
8   believe that they ought to be all consolidated in one court.
9           In the old days, when I first started practicing,
10  what I remember happening is that the judges would call each
11  other and say, you want to have it or you want me to have it,
12  and that cases would be decided sometimes that way, you know,
13  or they would be multi-districting transferred.  Here, we've
14  only got two cases, that doesn't make sense.
15          But, it really seems to us that the authorities that
16  are cited in -- in everybody's papers really don't apply here,
17  because, here, what we have got is a sui generis situation
18  where the arbitration clause is not where people are trying to
19  -- face it up against another fundamental issue with respect to
20  judicial economy.
21          And, the reasons that the courts historically have
22  been so strong behind the Federal Arbitration Act and in favor
23  of arbitration is to allow judicial economy and allow parties
24  to settle disputes in different ways.
25          Here, what we've got is a situation where the

1  arbitration, ironically enough, that Freedom is anxious to get
2  into, they are also trying to stay.  And so, we are not going
3  to face any issues of judicial economy, all we are going to
4  face is a separate litigation in Delaware which is going to
5  resolve the exact same issues in some ways.  And, we are going
6  to face competing litigations cross-country.  And I just don't
7  see the sense in that.
8             **THE COURT:**  Okay.
9             All right, anything else?
10            **MR. BERGER:**  No, Your Honor.
11            **THE COURT:**  All right, anything else?
12            **MR. CROSSMAN:**  I don't know if I made this clear,
13  but, although these are interesting issues, Your Honor, I think
14  that the question of whether the arbitration or the Delaware
15  action should proceed in tandem, separately, in one place or
16  not, is really, with all due respect, not before Your Honor.
17  The question here is just arbitrate or not, and then, my very
18  skilled counsel adversary can bring up either in Delaware, or
19  in arbitration, all these arguments and we can figure out how
20  to proceed.
21            Thank you.
22            **THE COURT:**  All right.
23            Well, I certainly tend to agree with that.  You all
24  are concerned, obviously, about the interest of your respective
25  clients; I'm concerned about my own docket.  And, while it's

1  not my practice to call judges in other districts and decide
2  who is going to keep what case, this is a fairly easy decision
3  to make.  I mean, there is clearly an agreement.  As I have
4  indicated, I believe that the language does not permit the
5  Court to read it permissively, as plaintiff's brief suggests.
6  It's a dispute that is subject to arbitration; it should be
7  arbitrated.  I'm ordering it to be arbitrated immediately.
8          I will not, however, dismiss the case in lieu of
9  arbitration.  It will be stayed on my docket until the
10 arbitration is completed.  And frankly, I don't really care
11 about the sequencing of it, that is something you all are going
12 to have to work out.  I'm sure your clients aren't interested
13 in paying a lot of money to fight the same issues in three
14 different locations.  And I'll simply tell you, if you are
15 successful on getting the Delaware case transferred here, I'm
16 going to stay it.  The case has to be arbitrated first.  I'm
17 not going to look at this case until after it's arbitrated.
18         And even though that involves different parties, I'm
19 not going to hear the Delaware case until after the case that
20 is filed first, which is the case on my docket, has been
21 arbitrated.  So the motion to compel arbitration is granted,
22 and the motion to dismiss is denied, okay?
23         *MR. CROSSMAN:*  Thank you, Your Honor.
24         *THE COURT:*  You're welcome.
25              **(Proceedings adjourned at 9:53 a.m.)**

*Sahar McVickar, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

---oOo---

**CERTIFICATE OF REPORTER**

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

**Sahar McVickar, RPR, CSR No. 12963**

**Sunday, May 18, 2008**